THOMAS LASWELL
*v.*
SILAS W. ROBBINS.

1. STATEMENT OF ACCOUNTS—*master's report.* Where the master in chancery, to whom a case has been referred to state an account between partners on evidence in the record, states it incorrectly as evidence in the record shows, it should be referred back to him for correction, and opportunity afforded to the parties to introduce other evidence.

14—39TH ILL.

Syllabus.

2. PARTNER—*his liability to account for partnership property.* Where a partner had received partnership property, and by the terms of the partnership was intrusted with its custody, management and disposal, he must be charged with its value, and to discharge himself he must account for its disposition, and what he has done with the proceeds.

3. SAME—*rule is general.* It seems that this rule prevails in all trials involving the adjustment of accounts, whether for the sale of goods and chattels or otherwise.

4. In such case the one partner only has to show that the other purchased or received the property and its value, and the presumption then arises that he is liable; and he to discharge himself must show payment, set-off, or some other legal defense.

5. MINGLING THE PROPERTY OF PARTNERS—*presumptions, evidence.* Where L. had entered into the business of raising, buying and selling stock, in partnership with R., on the farm where L. resided, and there being no provision in the partnership articles to commingle the stock of L. with that of the firm, this court cannot presume that he did so; and if he did place his own stock on the farm, to overcome the presumption that it became partnership property would require the clearest and most satisfactory proof.

6. OWNERSHIP OF PROPERTY—*partnership being ended.* The presumption would be, until rebutted, that the property at the termination of a partnership belonged to the firm, and, if so, and one partner appropriates it to his own use he must account for it in the settlement of the affairs of the partnership.

7. VALUE OF PROPERTY IN SUCH CASE—*how estimated.* In such a case it seems that the proper way would be to call upon neighbors to make an inventory, and fix the value of the property so taken.

8. And where, in such case, the partner having custody of partnership property appropriates it to his own use, without preserving any evidence as to its value, the other partner must establish his claims in the best mode he can; and if, in doing so, as he has to prove facts from which presumptions have to be indulged, which the wrong-doing partner may think overcharges him such wrong-doing partner will have no right to complain because he has failed to provide and preserve the evidence which it was his duty to have obtained.

9. REPORT OF MASTER—*will not support a decree where he mistakes the evidence.* Where a case had been referred to the master to state a partnership account on the evidence then taken and appearing in the record, it being evidence proper for that purpose, and the master allowed several items against the same party a second time, a decree founded on such a report will be reversed and the order of reference so modified as to permit both parties to be heard with any legitimate proof which they may produce before the master.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. Y. RICE, Judge, presiding.

Robbins originally filed his bill in the Sangamon Circuit Court, alleging a partnership, under written agreement, and its extension by parol, and praying a settlement. Laswell denied both allegations, and the court below, on the evidence, decided both in favor of Robbins, and rendered a decree against him for $411.83, that being the sum ascertained by the report of Mr. Campbell, master. Robbins appealed. The action of the court below was sustained, except as to the amount found to be due. For the error in that respect the decree was reversed, with directions that the testimony then taken in this cause be referred to the master, who should therefrom make up a report, showing :

" First, the whole cost of the cattle, hogs and horses purchased by the plaintiff, and which came to the possession of the defendant prior to March 1, 1856, under the agreement of March 1, 1853, and extended and enlarged by the parol assent of the parties to the time first mentioned. Showing, second, the amount of profits derived on the sale of any portion of said property, giving to the plaintiff an equal half part thereof and to the defendant the other equal half part thereof; and, third, to ascertain the value of the property so purchased by the plaintiff, which was in the possession or control of the defendant at the time of filing this bill, and which he refused to deliver up to the receiver appointed by the Circuit Court, and which inquiry will include the hogs, horses and other like property the said defendant may have disposed of to others without accounting for the same to the plaintiff, and for which sums, when ascertained, a decree shall pass in favor of the plaintiff, together with the costs of the suit." *Robbins* v. *Laswell*, 27 Ill. 365.

In pursuance of this order the report of Mr. Shutt, master, was made in November, 1864. The essential portions of that report are :

" First, amount advanced by Robbins to Laswell :
" Advance on original contract, ................. $254 00
" Ash purchase, ............................... 120 70
" Amount paid Spangler, ...................... 177 50

| | |
|---|---:|
| " Shobert,.................................... | $90 00 |
| " George Fagan,.............................. | 90 00 |
| " Joseph B. H. Agee,........................... | 115 00 |
| " Fletcher Talbott,............................ | 100 00 |
| " Francis Day,................................ | 95 00 |
| " Josiah Broadwell,........................... | 70 00 |
| " A. Reeves,................................. | 118 50 |
| " John Shannahan,............................ | 444 76 |
| " Thomas Radford,............................ | 120 00 |
| " Thomas Rippon,............................. | 295 00 |
| " Xavier Wochner,............................ | 60 00 |
| " Pierson Roll,................................ | 570 00 |
| " Washington Crowder,........................ | 60 00 |
| " John Carn, ................................ | 30 00 |
| " Goodrich Lightfoot,.......................... | 247 00 |
| " James Tomlinson,............................ | 10 00 |
| " Moses Laswell,.............................. | 56 00 |
| " Henry Jones, ............................... | 19 00 |
| " James Claywell,............................. | 90 00 |
| " Balance paid by Robbins to James Claywell for hogs, over and above the Fagan house,......... | 116 40 |
| " Thomas O. Wright,........................... | 30 00 |
| " Jefferson Stone,............................. | 151 00 |
| " Francis Day,................................ | 95 00 |
| " John Fagan,................................ | 102 00 |
| " Clawson Lacy, ............................. | 30 00 |
| " Jeremiah King, ............................. | 148 00 |
| " C. C. Blood, ............................... | 28 00 |
| " F. Linnard,................................. | 7 92 |
| " Edmund Fry,................................ | 45 00 |
| " G. S. McKennie, ............................ | 42 00 |
| " L. Carter, ................................. | 21 25 |
| " Daniel Little, ............................... | 9 70 |
| " John Gardner, Jr., .......................... | 20 00 |
| " William Jones,.............................. | 12 00 |
| " Daniel Broadwell, ........................... | 14 36 |
| " Robert Haslett, ............................. | 100 00 |

| | | |
|---|---:|---:|
| "H. B. Grubb, .............................. | $10 | 00 |
| "Edward Fry,.............................. | 50 | 00 |
| "Francis Claywell,.......................... | 87 | 00 |
| | $4,052 | 09 |

"Second, profits in sales of stock made by Laswell:

| | | |
|---|---:|---:|
| "Sale to Huber of stock, $1,990; profits on said stock sold, as declared by Laswell, $1,200, half of which to Laswell, and half to Robbins,......... | $600 | 00 |
| "Sale to Taylor of lot of cattle for $1,500; profits, according to testimony and Laswell's admission, $600,...................................... | 300 | 00 |
| "Hogs and cattle sold to William Butler, amounting in the aggregate to $594. According to the admission of Laswell, a profit thereon of one hundred per cent.; cost $287, and a half of which, | 143 | 50 |
| "Sale to George Fagan, $65; cost, $32.50; profit, $32.50, half of which,...................... | 16 | 25 |
| "S. M. Tinsley, hogs, $134.50; cost, $67.25; profit, $67.25, half of which,..................... | 33 | 62 |
| "Twelve head of cattle, sold at $480; cost, $240; profit, $240, half,............................. | 120 | 00 |
| "Sale of hogs to George Gregory for $203; cost, $101.50; profit, $101.50, half of which,........ | 50 | 75 |
| | $1,263 | 92 |

"Third, cattle butchered by Laswell and not accounted for to Robbins, and stock Laswell had on hand:

| | | |
|---|---:|---:|
| "Value of 28 head, as estimated by witnesses,.... | $650 | 00 |
| "Value of colt and heifer given to John Tomlinson, without accounting to Robbins,............ | 63 | 00 |
| "Value of three cattle and roan filly given to Jules Baules, without accounting to Robbins,........ | 111 | 00 |
| "Cattle traded George Fagan and George Nagle, without accounting to Robbins,............... | 65 | 00 |
| "Cattle on hand and value thereof at date of difficulty—56 head at $15 per head,............... | 840 | 00 |

| | | |
|---|---:|---:|
| " Horses on hand and value thereof at date of difficulty—10 head at $75,...................... | $750 | 00 |
| " Hogs on hand and value thereof at date of difficulty—20 head at $5,...................... | 100 | 00 |
| | $2,579 | 00 |

" Total amount in the hands of Laswell not accounted for to Robbins:

| | | |
|---|---:|---:|
| " Amount advanced,........................... | $4,052 | 09 |
| " Robbins' half profits on sales,.................. | 1,263 | 92 |
| " Amount cattle butchered and stock on hand .... | 2,579 | 00 |
| | $7,895 | 01 |

" Fourth, amount received by Robbins from Laswell:

| | | |
|---|---:|---:|
| " On sale Huber cattle,....................... | $1,000 | 00 |
| " Amount received on Taylor sale,.............. | 900 | 00 |
| " Amount paid on Powell note,................. | 300 | 00 |
| " John Fagan, house,........................... | 40 | 00 |
| " John Fagan, for wood hauling,................ | 24 | 00 |
| " Oats, $10; stock delivered to him for Robbins, $235,......................................... | 245 | 00 |
| " George Fagan, Jr., 13 loads wood,............. | 20 | 25 |
| " Andrew Laswell,............................. | 40 | 00 |
| " George Gregory paid Robbins,................ | 203 | 00 |
| " Admission of Robbins,....................... | 45 | 00 |
| | $2,817 | 25 |
| " To which is to be added his share of profits on sales, ..................................... | 1,263 | 92 |
| | $4,081 | 17 |

" And the balance due by Laswell to Robbins is as follows:

| | | |
|---|---:|---:|
| " Amount of all accounts against Laswell,........ | $7,895 | 01 |
| " From which is to be deducted Laswell's account,. | 4,081 | 17 |
| | $3,813 | 84 |

Laswell excepted to the report; the exceptions were over-ruled, and the report was approved. He then moved to recom-mit the case to the master for additional proof, which motion was also overruled and a decree entered for $3,813.84. At the April Term, 1865, Laswell filed a petition asking that the case be again referred to the master. The petition alleges that in the original evidence taken before the master, Laswell offered a paper proved to be in the handwriting of Robbins, which was marked as exhibit C; that in making up said report, that exhibit was not considered by the master, and that the credits to which he is justly entitled by said exhibit amount to about $1,100. The petition continues:

"2. In said report petitioner is twice charged for a mare bought of G. Fagan, being $90, when he should have been charged only once.

"3. Your petitioner is charged twice with the sum of $95 in said report as being paid to Day, when he should have been charged but once.

"4. Robbins by said report is credited with $480, paid to P. Roll, when it is a clear mistake, as the credit should have been given to Laswell. Which mistake if corrected makes a difference of $960 in the master's report in your petitioner's favor.

"5. Your petitioner is charged with the following sums advanced out of his means to purchase stock for the Claywell farm, after the new agreement had been made to carry on the farm together, rescinding any old contract, to wit:

"Shobert, for wagon for Andrew Laswell, . . . . . . .     $90 00
"Cattle bought of Josiah Broadwell, . . . . . . . . . . .     70.00
"Roll, for cattle, . . . . . . . . . . . . . . . . . . . . . . . . . . . .     480 00

"Again he is charged for the same stock as driven away from said farm, and included in the cattle butchered and on hand.

"6. Your petitioner is charged by said report: first, for the money which went to purchase the stock said to be on hand and belonging to the old partnership when the bill was filed;

and, in the second place, with the value of the cattle; which double charge is neither consistent with justice or equity, nor could have been in the contemplation of the Supreme Court.

"7. Your petitioner states that the charge of one hundred per cent. profit on stock sold, is very gross injustice to him; that there is no testimony in the case to justify such charge; and if there was testimony to show such profits, it is so extravagant and unreasonable when applied to a continuous trade in cattle for two or three years, your petitioner paying all expenses, that it is unworthy of any consideration whatever.

"8. In charging this petitioner with $2,576 for cattle butchered and on hand, is the same gross error, sixth above stated. It is a double charge: first, for the purchase-money of the cattle; and, second, for the value of the cattle butchered. That all that in equity in any view of the case could be charged against him would be the fair profits on the cattle when butchered, or on the cattle on hand; to be estimated at the time of filing the bill, or when sold or otherwise used. He repeats that the Supreme Court did not contemplate such a double charge.

"9. Your petitioner would respectfully submit, that the testimony showing, or tending to show, the value of stock on hand and butchered, is so vague and uncertain that any report or decree passed upon it could not be relied upon for reason of the vagueness and uncertainty. It is also contradictory, as the proof establishes beyond question, that a considerable portion of the stock on hand belonged to petitioner individually, having been raised by him or purchased with his own means. He respectfully suggests, that if the rule laid down, in the opinion of the Supreme Court, of charging him and requiring him to account for all the stock on hand, is the true rule in his case, that, on account of this vague, uncertain and contradictory testimony, this case ought to be again committed to the master, to enable the parties to establish the amount more clearly."

The petition concluded with a prayer that the decree might be opened, and the case again referred to the master to correct any and all mistakes in the report. The court denied the prayer of the petition. The case was brought to this court by Laswell on a writ of error, and he now assigns the following errors :

1. Overruling the exceptions to the master's report.
2. Approving the report of the master.
3. Refusing to hear further evidence.
4. Refusing defendant's motion for a rehearing.
5. The amount for which decree was rendered.
6. Entering any decree in favor of complainant.

Messrs. STUART, EDWARDS & BROWN, for the plaintiff in error.

Mr. JAMES C. CONKLING, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

This record presents the question whether the account as stated between the parties is, correct, and whether the master should have heard other and further evidence than that in the record at the time the reference was made. On examining the evidence in the case, we are satisfied that the master has, in stating the account, inadvertently allowed items against plaintiff in error a second time. So far as we can see, the two charges against plaintiff in error for ninety-five dollars paid to Francis Day are one and the same transaction. His deposition was twice taken. In the first, he says, that about the 28th of February, 1856, he sold to plaintiff in error seven head of cattle, and he then said he must see Robbins about getting the money and said that he and defendant in error were buying cattle in partnership. He, however, in this deposition, states no price at which the cattle were sold. In his second deposition he states that, he thinks, in February, 1856, he sold plaintiff in error seven head of cattle for ninety-five dollars, and he identifies an order drawn by plaintiff in error on defendant in error for that sum and dated on the 29th of Feb-

ruary, 1856, and an order appears in the record, dated on the 28th of February, 1856, for the same amount, with a memorandum of several cattle, seven in all, appearing to have been indorsed upon it. These several items of evidence would seem to prove but one transaction, and the master we think erred in treating it as two.

Inasmuch as the case will have to be again referred to a master, and as the proof may then be altogether changed or greatly modified, we deem it unnecessary to examine whether the various items of the account to which objections are interposed are well taken. When the master shall have the whole case before him he will no doubt be enabled to arrive at just conclusions. We find, by looking into the evidence contained in the record, that it is true, as he reports to the court below, that it is on that evidence exceedingly difficult to arrive at satisfactory conclusions. Plaintiff in error having received the partnership property, and being by the terms of the partnership intrusted with its custody, management and disposal, when shown that he received it, he must be charged with its value, and, to discharge himself, he must account for its disposition, and what he has done with the proceeds. Any other mode of disposing of the controversey would impose an undue burden upon defendant in error, and would be to reverse the rules governing the statement of accounts. This rule prevails in all trials involving the adjustment of accounts, whether for the sale of goods and chattels, or otherwise. The plaintiff only has to show that the defendant purchased or received the property and its value, and the presumption then arises that he is liable, and he to discharge himself must show payment, setoff or some other legal defense.

Having entered into the business of raising, buying and selling stock on the farm upon which he resided, and having made no provision in the partnership articles to commingle his own stock with that of the firm, we can hardly presume that he did, and, if he placed his own stock on the farm, to overcome the presumption that it became partnership property would require the clearest and most satisfactory proof. Until such proof

should be adduced, the presumption would be that when he placed it there it was to and did become partnership property, for the value of which the firm would be liable to account to him, but the profit would inure to the firm, and if loss occurred it would have to be borne by the firm.

When the partnership terminated, plaintiff in error, if he had regarded the duties and obligations of a partner, instead of appropriating the property to his own use, would have made some disposition of it for the benefit of the members of the firm, or would, at least, have taken the necessary steps for a settlement. The presumption would be, until rebutted, that the property at the termination of the partnership belonged to the firm, and, if so, and plaintiff has appropriated it to his own use, he must account for it on the settlement of the affairs of the partnership. It was then in his power to have had clear and satisfactory evidence of the articles and their value on hand at the time the partnership terminated. It would have been attended with but little difficulty, loss of time, or trouble, to have called upon neighbors, to have made an inventory and fixed the value; but, having failed to do so, and defendant in error not having the power to do so, he must establish his claims in the best mode he can, and if, in doing so, he has to prove facts, from which presumptions have to be indulged, which plaintiff in error may think overcharges him, he will have no right to complain if he has failed to provide and preserve the evidence which it was his duty to have obtained.

It is urged that the opinion of the court, when the case was previously before it, prevented plaintiff in error from introducing evidence before the master, when he last stated the account. The opinion does require the account to be stated on the evidence then taken and appearing in the record, and it was for the reason that the parties had taken evidence that was proper for that purpose. The court below had found that there had been a partnership; that there had been no accounting between the partners, and decreed that they should account; and referred it to the master to state the account. He did so, and, so far as we can see, plaintiff in error did not

offer to produce any evidence which he now proposes to produce. Under such circumstances he has no right to claim now to come in and ask a reversal of the decree, that he may introduce· additional evidence. Had he, before the master, Campbell, offered such proof, and it had been rejected, and the chancellor had refused to refer it back, that he might introduce his evidence before the master, it would have been otherwise.

But inasmuch as the decree of the court below will be reversed on other grounds, and the case again referred to a master to state the account, we have concluded to modify the former order, so as to permit both parties to be heard, with any legitimate proof which they may produce on the hearing before the master. The decree of the court below is reversed, and the cause is remanded with directions to again refer it to a master to state the partnership accounts and not the private accounts between the parties.

*Decree reversed.*