## ELISHA B. STEERE

### *v.*

## BIGELOW HOAGLAND *et al.*

50  377
22a  48
50  377
136  603
50  377
205  ²230

1.  CREDITOR'S BILL—*fraudulent transfer of goods—of the rule for the accounting of the fraudulent purchaser.* A sale of goods was made under such circumstances and in such manner as rendered the transaction fraudulent in law as to the creditors of the vendor, although there was no fraudulent intent on the part of the purchaser. To these goods the vendee added new purchases from time to time, to keep up the stock, and the several lots of goods were so intermingled that it could not be known at what prices they were respectively sold. The first stock purchased was less valuable in character and condition than the new purchases which were added to it. Some two or three years after the first transaction, a creditor of the original vendor filed his bill to subject the proceeds of the sales of the goods so fraudulently transferred, to the satisfaction of his debt: *Held*, that as the admixture of these goods with the balance of the stock, and the failure to keep distinct accounts of their sales, was not for any purpose of concealment, and as it would be impracticable to ascertain the amount for which any of the parcels of goods were actually sold, the rule to govern the master in taking the account is, to charge the defendant with the actual value of the goods. In ascertaining this, the master would be informed in the same way he would be in ascertaining any other value not fixed by the parties interested. Neither the invoice price of the original purchases, nor the price fixed at the fraudulent sale, should govern him, but what was the fair and just value of the goods at the time of the transfer as they then were. In such a case, it would be improper to charge the defendant with an average of the profits received by him for sales of the confused goods—the old as well as the new—merely because he could not render a satisfactory account of the actual amount of the sales of the old goods, as there was no such actual bad faith on his part as ought to subject him to such a penalty.

2.  To the amount thus ascertained should be added interest at the rate of six per cent. per annum, to the time when the fraudulent purchaser had paid some of the debts of his vendor, according to an understanding between them at the time of the sale, and upon any balance remaining in the purchaser's hands, until the final decree.

3.  On stating the account on this basis, there could be no claim for a credit for selling the goods, or for commissions.

4.  And it appearing that the fraudulent purchaser had, previously to being notified of the filing of the creditor's bill, given his own notes and acceptances to other *bona fide* creditors of his vendor, which were received in full payment

of their debts, he should receive credit for such notes and acceptances, the same as if he had already paid the money.

APPEAL from the Circuit Court of Macon county; the Hon. JOHN M. SCOTT, Judge, presiding.

This case was before this court at the January term, 1866, and will be found reported in 39 Ill. 364, where a full statement of the case is presented.

Messrs. WILLIAMS & BURR, and Messrs. HIGGINS, SWETT & QUIGG, for the appellant.

Mr. W. H. HANNA and Mr. R. E. WOODSON, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This case is again before us, upon the final decree entered upon the second report of the master, exceptions to the first having been sustained by the circuit court, and a second reference ordered on specific instructions.

The master, in his first report, charged the defendant with $27,571 for the " Gray" stock of goods, which was about 65 per cent of the New York cost. The court sustained exceptions to this report, and again referred the case to him, with instructions to re-state the account, and that, in so doing, he should charge the defendant with all moneys received from Gray, and from the collection of accounts and notes transferred to him by Gray, and for all sums received from the sale of goods obtained from Gray, charging him on such sales at the rate per cent. Steere sold the goods obtained from Gray, together with his own goods mixed up with the " Gray stock," unless the defendant should render a satisfactory account to the master of the actual amount received by him from the sale of the goods received from Gray.

Under these instructions, the master reported against the defendant the invoice price of the " Gray goods," *plus* eleven and a-half per cent., the supposed rate of profits for which the confused goods, that is, the old stock and the new goods added to them, sold.

We think the court erred in this instruction given to the master. It is evident the master, in making up his first report, and the learned judge in examining it and the evidence on which it was founded, despaired of arriving at any thing like a satisfactory result as to the amount for which the goods actually sold, and after looking through this evidence, we confess ourselves no more enlightened than they were. To do so was evidently a hopeless task. At the best, any conclusion must be the result of the merest conjecture, and liable to do the greatest injustice to one party or the other. Were that attainable, as we said in remanding the cause when formerly before us, the amount for which the goods actually sold, less the cost of selling, would be the amount with which the defendant should be charged, but as it is now manifest that such a result is unattainable, some other basis for making the estimate, though less satisfactory and more liable to do injustice to one party or the other, must, necessarily, be adopted. This necessity forced the circuit court to prescribe an arbitrary rule to arrive at a result, and we now have to inquire whether that was the most just rule which could have been adopted to obtain the desired end.

The court was led to the adoption of the rule prescribed, because the defendant had been guilty of misconduct in mixing these goods with new purchases, and keeping no separate account of their sales, whereby the exact amount for which they sold might have been ascertained. If, in doing this, the defendant was actually guilty of bad faith—if he did it in order to conceal the amount for which they sold, so that the creditors might not have the means of ascertaining the true amount, then it was proper he should be visited with a severe penalty for his fraudulent conduct in endeavoring to conceal that fact, and even strong inferences should be drawn against him;

indeed, every inference not incompatible with established facts.

Although we found, heretofore, that the sale of these goods by Gray to Steere, was fraudulent in law as to the complaining, creditors, it by no means follows, that everything which the defendant subsequently did with them was, necessarily, with a fraudulent intent.

The present inquiry is, as to the existence of a new fraud, and is quite independent of the old one. As between the parties themselves, and as to all the creditors who acquiesced in the sale, which was by far the largest proportion of them, indeed, all, we believe, except these complainants, that sale was perfectly fair and legitimate, and there is no evidence which we have found that these complainants ever raised one note of remonstrance or protest as to the *bona fides* of the sale, until two or three years after the transaction, and most probably after almost every remnant of these goods had been sold. All this fails to convince us that the defendant had an actual fraud in contemplation when he treated the goods in the ordinary way by mixing them with the new purchases as made by him from time to time, to keep up his stock. It is not unreasonable to assume, since so large a proportion of the creditors acquiesced in the purchase, that none would be likely to question it, even though he was conscious the transaction was tainted with legal fraud which a court of inquiry would condemn, nor is it unreasonable to suppose that Steere really thought the sale would be upheld by the courts as fair and honest, and when we take all the circumstances into our consideration, we think it quite as proper to refer his subsequent conduct to such a state of mind, on his part, as to a deliberate intention to perpetrate a new and an actual fraud.

To have kept these goods entirely separate from his other goods, and to have kept distinct accounts of their sales, would have largely increased the expense of their sale, and would, of itself, have been very strong proof that he considered his purchase of them fraudulent, and that he might be called upon to

give a strict and separate account of their proceeds. To our minds, the course he took manifests a belief, on his part, that his purchase was an honest one, and that the courts would sustain it as one made in good faith, while an opposite course would have been strong proof of the reverse.

We are satisfied the admixture of these goods with the balance of the stock, by the defendant, was not for the fraudulent purpose of concealment, and that he should not be visited with the penalties which would properly fall upon him for the perpetration of a fraud of this nature.

That the rule prescribed by the circuit court does inflict a penalty upon the defendant, by charging him with more than the goods actually produced, we cannot doubt. The undisputed evidence shows, that many of these goods were old in style —out of fashion— a large proportion of the boots and shoes, hosiery and gloves, were mismated, and, indeed, many of the goods were quite unsaleable. To assume that they sold at the same profit as the new purchases judiciously made, is, we think, beyond all doubt, more than was actually realized, and was, practically, inflicting upon the defendant a penalty, and, we think unnecessarily.

Inasmuch as it must be conceded that it is now impracticable to ascertain the amount for which these goods were actually sold, we think the rule established by this court, in the case of *Laswell* v. *Robbins*, 39 Ill. 209, should govern the master in taking the account. The rule there established is, that the defendant should be charged with the actual value of the property. In ascertaining this, the master will have to be informed in the same way he would be in ascertaining any other value not fixed by the parties interested. Neither the invoice price of the original purchases, nor the price fixed at the fraudulent sale, should govern him, but what was the fair and just value of the goods at the time of the transfer and as they then were.

After all, the creditors cannot reasonably complain of this, for if they had levied their executions upon these same goods

at the time of the transfer, and the sheriff had sold them, there is no probability that they would have sold for more than their actual value, while it is not at all impossible they would have sold for less. To this should be added interest at the rate of six per cent. per annum, until the funds were paid out by Steere to Gray's creditors, and upon any balance remaining in his hands, until the present time. On stating the account on this basis, it follows, there can be no claim for a credit for the expense of selling the goods, or for commissions.

As to the other items of the account, we do not deem it necessary to go through the evidence relating to them, as it may be changed on a re-hearing, but will only repeat the instructions given on remanding the cause before, and for which we refer to the opinion then filed, reported in 39 Ill. 264.

It may, however, be proper to add a word of explanation in view of some of the testimony adduced, and that is, where Steere has actually given his notes and acceptances before the commencement of the suit, or before notice given that the bill was to be filed, in payment of Gray's debts actually and *bona fide* due, and such notes or acceptances have been received in full payment of such indebtedness, Steere should have credit for such amounts, the same as if he had already paid the money. Any balance found against the defendant must be divided among these creditors *pro rata* until paid.

The decree is reversed and the cause remanded for further proceedings, consistent with this opinion.

*Decree reversed.*