# FREDERICK PEARCE *et al.*

## *v.*

# RICHARD H. PEARCE.

1. PARTNERSHIP—*parties have the right to fix the terms.* Parties have the right to enter into partnership upon such terms as they may choose, and the agreement will be binding upon them, whatever its effect may be

as to other parties. They may limit its duration, or the terms that shall govern it. Thus, where it relates to the building of a mill, they may agree that it shall terminate when the mill is completed and established in business, and then that one shall draw out the capital advanced by him, taking no interest in the real estate, and the courts will carry such agreement into execution as between the parties.

2. JURISDICTION—*of stating partnership account.* Where a bill for an account charges that the parties were partners, which is admitted by the answer, a court of equity has jurisdiction, and may properly adjust and state the account.

3. ACCOUNT—*interest, instead of profits.* Where a partnership was entered into for the building of a mill, the complainant putting in money, to be repaid when the mill was completed and established in business, he taking no interest in the real estate or machinery, it was *held*, that he was to be repaid out of the profits, and also his share of the profits; and where, in such case, the defendant, who kept the books, refused to show what the profits were, it was *held* proper, in stating the account, to decree the repayment of the capital advanced by the complainant, with interest thereon, he being willing to accept that. If the profits were less than the interest, the defendant should have rendered an account showing such fact.

4. SAME—*sharing in loss.* Although a partner advancing capital to aid an enterprise was to have no interest in the property, but to have his money refunded to him at a certain time, with his share of the profits, yet, if he jointly uses the property, and while so using the same and exercising control over it, an accident happens, producing loss, there is no principle of law by which such partner should bear the whole loss.

5. DECREE—*disposing of case as to all the parties.* On bill for a partnership account, a decree was rendered which failed to make any disposition of the case as to one of the defendants, which was objected to in this court. The evidence failed to show any interest in such party: *Held*, that the cause would not be reversed for the irregularity, but that this court would dismiss the bill as to such party.

APPEAL from the Circuit Court of Clay county; the Hon. JAMES C. ALLEN, Judge, presiding.

This was a bill in chancery, filed by Richard H. Pearce, against Frederick Pearce and Martha Pearce, for a partnership account. The facts of the case are stated in the opinion.

Messrs. CHESLEY, HAGLE & J. FIELDS, for the appellants.

Mr. RUFUS COPE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Appellee filed a bill against appellants for an account and settlement as partners. From the evidence, we can see that the business was loosely transacted, and it may be doubtful whether the parties had a very clear and distinct understanding of the arrangement; but, from the evidence of appellee, and Edwin, who was, at the time appellee advanced the money, a partner of appellant Frederick, it appears the advance was made with the understanding the money was to be refunded when the mill was completed and established in business. Appellee contends, and testified on the trial, that the $1312 was to be thus paid, with his share of the profits. Edwin does not testify that profits were to be paid, but simply as to the money.

The court unquestionably acquired jurisdiction, by the allegations of the bill that the parties were in partnership, and by the admission of appellant, in his answer, that they were partners. Having acquired jurisdiction, it was proper for the court to proceed to take the account and adjust the differences between the partners; and the court, under well recognized rules, was bound to state the account according to the agreement of the partners when they formed their partnership. They could form that relation on such terms as they might choose, and the agreement would be binding between themselves, whatever its effect might be as to other parties. They had the undoubted right to limit the time of its duration, or the terms that should govern it. If it was to terminate when the mill was completed and the business established, there is no rule of law to prohibit them from making the arrangement, and the same is true as to what should be paid to appellee when the partnership should be dissolved. If the agreement had been that appellee should have his money restored to him, with all the profits, or any specific portion thereof, the court would be bound to carry out their partnership

agreement. The contract being legal and properly entered into, a court of equity would execute it.

It is manifest, from the evidence, that appellee did not, nor did the parties intend or suppose that he should, become a partner in the real estate on which the mill was erected, or in the structure or machinery. When the money was advanced, there was nothing said as to his having any interest therein. The only reasonable inference that can be drawn is, that he was to become a partner in the profits, the real estate and machinery to be counted as capital on the part of appellant, and the money of appellee and Edwin counted in the same manner, and profits divided among the parties according to the capital each had in the concern; that each should draw out, on a final settlement, what was put in by him, and profits in proportion.

The agreement here was, that appellee should have his money, and appellant, by implication, to have the land, buildings and machinery, which he has, and holds independent of appellee. The evidence is abundant that he was to have all of his money restored to him, and this, too, at the completion of the mill, according to Edwin's testimony, and as soon thereafter as the business should be established, as appellee testifies, with his share of profits.

From the manner in which the parties acted, it would seem that, after the mill was completed and the business was established, the parties regarded the partnership as still subsisting. The fact that appellee leased his interest in the mill to appellant for one year, for $85, seems to prove that fact; and, inasmuch as appellant seems to have kept the books carelessly, and has made out no account nor offered to make any, and the court could not ascertain the profits that were made, on a final hearing, the court could not do otherwise than decree the payment of the principal sum put in by appellee according to the partnership agreement, and, also, his share of the profits; but, inasmuch as appellant failed to furnish the evidence of the state of the account, as he alone could do,

Opinion of the Court.

and as appellee seems to have been willing to receive his money, with legal interest, we can see no objection to allowing it from the time the principal was advanced, which seems to have been done in this case. Where a partner, having charge of the business and books of the concern, fails, when called on by the court, to account and show the profits he has received, he surely has no right to complain if he is required to pay interest rather than the profits. If the profits were less than legal interest, he should render an account and show the fact. The information all being in his hands, his failure to account should be regarded as evidence that the profits were greater than legal interest, and there can be no objection in permitting complainant, if he choose, to take legal interest instead of the profits. The court did no more in this case.

It is, however, urged that appellee should have been required to account for injury to the boiler whilst he had possession of the mill. It appears, from the evidence, that it was the arrangement that, during that time, appellant was running an ax-handle factory by the same engine, and was entitled for the purpose to one-half of the steam, and was to pay one-half of the expenses of an engineer; and the presumption is, that, as the owner of the machinery, and being entitled to use one-half of the steam, and required to pay one-half of the wages of the engineer, he retained at least one-half of the control of the furnace and engine. That such was the case, may be readily inferred from the fact that on one occasion, when his son found there was not sufficient water in the boilers, and supposed the flues were in danger of being injured, he went at once to his father to inform him, and they returned together, and found the damage done. If appellant had no control over the engineer, why did his son seek him, or why did he go to look after the matter? If appellee had the control, why not have sought and given him the information? If, as we think, it may be fairly inferred, from the evidence, appellant had equal or superior control over the engineer, why hold appellee responsible for the loss thus occa-

sioned? We are aware of no principle upon which it may be done.

It is objected that the decree does not determine whether or not Martha has any interest in the subject matter of liti- gation, and that the court should have disposed of the bill in some manner as to her. It is, no doubt, true that it would have been more regular to have dismissed the bill· as to her, as the evidence fails to disclose any interest in her; but we will not reverse on that ground, but dismiss the bill here as to her, and the decree will, in all other things, be affirmed.

*Decree modified.*