GARRETT, executrix, *v.* MORRIS & CO. *et al.*

In the trial of an equitable proceeding for an account and settlement, brought by one partner against another to whom, under the contract of partnership, the former had furnished money for carrying on the business, which the latter was to manage, and, after accounting to the other for the capital invested, was to share with him in the profits and losses, evidence showing that the plaintiff had supplied the defendant with a certain amount of money for the purposes stated, that he had invested the same in goods which were still on hand, together with proof of the value of these goods, was sufficient to make out a prima facie case for the plaintiff, and this is true though in his petition he waived discovery, and averred his ability to prove that profits had been realized.

Argued December 14, 1897. — Decided April 12, 1898.

Equitable petition. Before Judge Lumpkin. Fulton superior court. March term, 1897.

*N. J. & T. A. Hammond,* for plaintiff. *Mayson & Hill, Payne & Tye* and *Dorsey, Brewster & Howell,* for defendants.

SIMMONS, C. J. It appears from the record, that in July, 1892, W. J. Garrett and E. S. Morris and N. W. Murphy entered into an agreement of partnership for the purpose of purchasing and selling bran. Their contract was expressed in a receipt given by Morris and Murphy which reads as follows: "Received of W. J. Garrett $1,408.61, to be invested in seven cars of wheat bran, on a joint account of Garrett and Morris & Co., said sum to draw eight per cent. from date, the said bran to be sold at such time as agreed upon by Garrett and Morris & Co., and when sold the proceeds to apply to this account until all of this bran has been sold. Then the profit or loss accruing from said deal to be equally divided between said Garrett and Morris & Co., said Morris & Co. to handle the bran free of charge, except storage and insurance charges, and that expense is to come out of the proceeds of the sale of the bran." They made like contracts from time to time from July to November 14, 1892, Morris & Co. giving to Garrett upon each advancement that Garrett made to them a similar receipt to the above, and also a memorandum in these words: "July 27, 1892. The following cars wheat bran paid for to-day, for which W. J. Garrett has our receipt:" (Then follow the initials of the cars, the number of sacks in each, and their weight. For instance, "L. C. 6467–400 sacks, 32,000.") "Same to be stored in our warehouse. [Signed] E. S. Morris & Co." In July, 1893, Garrett filed his equitable petition against Morris & Co., in which he claimed that they were indebted to him in the sum of $10,000; alleging that the amount was due; that he had made demand for payment thereof, which was refused. He waived discovery, prayed for an accounting, and for a decree against the defendants for the balance which might be due him, and for general relief. He also alleged in his petition that the bran was all sold at a profit of twenty-five per cent. Morris & Co. did not answer the petition, but simply filed a plea of not indebted. On January 18, 1897, the cause was submitted to an auditor; and in May thereafter the plaintiff died, and his executrix was subsequently made a party plaintiff. After hearing the case the auditor reported in favor of the plaintiff. The defendants filed several exceptions to the report of the auditor, among them being one to the effect that

the plaintiff had failed to submit sufficient evidence to make out his case.    The court sustained this exception, and directed a verdict for the plaintiff for $1,000.00, as to which there was no dispute, thus in effect directing a finding against the plaintiff upon that branch of the case to which the real controversy between the parties related.

It appears from the evidence reported by the auditor, that the plaintiff introduced the above-described receipts showing that Morris & Co. had received the money.    He also introduced the memoranda attached to each receipt, showing the number of cars, number of sacks, and their weight; and that they had purchased this quantity of bran with the money.    He proved by oral testimony the value of the bran.    This, in our opinion, was sufficient to make out a prima facie case, and cast the onus upon the defendants of showing what disposition they had made of the bran and the proceeds thereof.    The receipts above described showed that Morris & Co. had the custody, management, and disposal of the bran.    The memoranda showed that at the time they gave these receipts the bran was in their warehouse. There is a fiduciary relation between partners.    Trust and confidence are reposed by one in the other; and therefore, in a petition on the equity side of the court for an accounting between them when the partnership has been dissolved, or the venture for which it was created has been completed, if the plaintiff partner shows property in the possession of the defendant partner, and its value, it then becomes the duty of the defendant to show a proper disposition of the property and its proceeds; and if he fails so to do, the auditor, or a jury, would be authorized to find the value of the property against him.    In the case of Gillett *v.* Hall, 13 Conn. 426, it appears that one partner filed a bill for an account and settlement against the other. The complaining partner showed that the other one had in his possession certain notes for certain amounts.    The defendant partner failed to show what disposition he had made of them or their proceeds.    The committee (auditor) "charged the notes at their nominal amount, without distinguishing the good or collectible from the doubtful and desperate."    In explanation of this they state that they gave reasonable notice to the de-

fendants of the time and place of their meeting, who refused to appear before them, and neglected to make any disclosure, explanation, or denial of the plaintiff's charges.   The committee thereupon proceeded upon the only evidence they had, the evidence produced by the plaintiff.   The court in that case said: "The defendants had these notes in their own possession; and they only knew their situation and value; which they could have shown to the committee.   Under such circumstances, produced by the defendants themselves, the committee could have pursued no other course than the one adopted by them; unless it was to have abandoned the investigation as impracticable, and thus have permitted the defendants, by their own act, to defeat the course of justice."

In the case of Laswell v. Robbins, 39 Ill. 209–210, the court held: "Where a partner had received partnership property, and by the terms of the partnership was intrusted with its custody, management and disposal, he must be charged with its value, and to discharge himself he must account for its disposition, and what he has done with the proceeds.   .   In such case the one partner only has to show that the other purchased or received the property, and its value, and the presumption then arises that he is liable; and he to discharge himself must show payment, set-off, or some other legal defense."   In the case of Johnson v. Garrett, 23 Minn. 565, the court held: "Where, in an accounting between partners, it appears that one of them, during the continuance of the partnership, had immediate charge and control of the firm's books of account, and the exclusive management of its finances, and the custody and control of its money, and the moneys received in the firm business exceed the moneys disbursed in such business, and it does not appear that the excess was applied to the use of the firm and for its benefit, such excess is presumed to remain in the hands of the partner so having the control and custody of the firm money, and he is properly chargeable therewith in the accounting."   In the case of Pearce v. Pearce, 77 Ill. 284, the following ruling was made:   "Where a partnership was entered into for the building of a mill, the complainant putting in money, to be repaid when the mill was completed and estab-

lished in business, he taking no interest in the real estate or machinery, it was held, that he was to be repaid out of the profits, and also his share of the profits; and where, in such a case, the defendant, who kept the books, refused to show what the profits were, it was held proper, in stating the account, to decree the repayment of the capital advanced by the complainant, with interest thereon, he being willing to accept that. If the profits were less than the interest, the defendant should have rendered an account showing such fact." See also 2 Bates on Partnership, § 983, and authorities there cited; Webb *v.* Fordyce, 55 Iowa, 11. In all these cases the plaintiff did not prove any more than was proved in this case, but the courts held that the burden was upon the defendant to show what disposition he had made of the property or the proceeds.

But it is claimed by the defendants in error here, that the judgment of the court was right because the plaintiff alleged that the defendants had sold the property and made a profit thereon; and alleged his ability to prove all of his allegations, by waiving discovery. We are not aware of any decision of this court or any other court that holds that a plaintiff is to be nonsuited or dismissed because he fails to prove every allegation in his declaration or petition. If he makes out a case that will entitle him to recover, that is sufficient. We think we have shown that the plaintiff's proof in this case was sufficient to authorize him to recover. If it had been an action of trover for the recovery of property and its hire, and he had proved title, possession in the defendant, and the value thereof, could any one say that he should have been nonsuited because he failed to prove hire? Should a plaintiff suing in ejectment for land and mesne profits be nonsuited, if he proves title to land, because he fails to prove mesne profits? If a plaintiff brings an action for breach of contract and alleges large damages, and proves a breach without proving the damage claimed, would it be legal to grant a nonsuit because he failed to prove the amount of damages he alleged? We think, therefore, the plaintiff, having made out a prima facie case, was entitled to recover. Whether the amount found by the auditor was correct or not, we do not decide, inasmuch as the

trial judge did not pass upon that question.   He can investigate it for himself at the next hearing, or can recommit it to the auditor, as he deems best.

   *Judgment reversed.    All concurring, except Cobb, J., absent.*