1. It was not error to allow the defendant to file an answer at the trial term, where the case had not been marked "in default" on the docket, nor any order taken declaring the same to be in default. Davis v. Freeman, 190 Ga. 833
(10 S.E.2d 847).
2. This court will in no case reverse a ruling refusing to direct a verdict. Rivers v. Atlanta Dental College, 187 Ga. 720
(1 S.E.2d 750).
3. The burden is on the plaintiff in error to show error. A reversal will not be had on an assignment in error based on an order of the trial court disallowing an amendment, where the record is silent as to whether or not the proffered amendment was objected to, or demurred to, and if so, on what grounds, and where there were valid reasons for its disallowance if properly and seasonably presented. Compare White v. Little, 139 Ga. 522 (2 b) (77 S.E. 646).
(a) All proceedings of every kind in any court of this State to set aside judgments or decrees of the courts, shall be made within three years from the rendering of said judgments or decrees. Code, § 3-702.
(b) Parties to the judgment under attack are necessary parties to a suit to set it aside. Compare Whitaker v. Smith, 33 Ga. 237; Bell v. Hanks. 55 Ga. 274; Exchange Bank of Macon v. Elkan, 72 Ga. 197; McArthur v. Matthewson, 67 Ga. 134; Whitley Grocery Co. v. Jones, 128 Ga. 791
(58 S.E. 623); Bullard v. Wynn, 134 Ga. 636
(68 S.E. 439); and Marshall v. Marthin, 192 Ga. 613
(15 S.E.2d 861).
4. An order entered by the ordinary on a petition under the Code, § 49-609, revoking a guardianship and directing the guardian forthwith to deliver over to his ward the latter's property, money, and effects, is a judgment of a court of this State, within the meaning of the Code, § 3-702. Compare Wessel-Duval v. Ramsey, 170 Ga. 675 (153 s. e. 744).
(a) The case last cited, which arose on an equitable petition wherein certain creditors sued administrators for a devastavit, and for an accounting, and sought to set aside for fraud the judgment of the court of ordinary approving the return of appraisers appointed to set apart a year's support to the widow, can not be distinguished in principle *Page 624 
from the instant case, which arose on an equitable petition to cancel certain deeds, and by amendment sought to set aside for fraud the judgment of the ordinary declaring that a person's sanity had been restored, and ending the guardianship.
5. The right of a plaintiff to recover upon proof of the allegations made in his petition is adjudicated favorably to him by a judgment overruling general demurrers thereto. Brooks v. Rawlings, 138 Ga. 310 (75 S.E. 157); Lawrence v. Boswell, 155 Ga. 690 (118 S.E. 45); Lee
v. Jones, 161 Ga. 829 (132 S.E. 79).
6. Where a plaintiff proves every material allegation of his petition without at the same time disproving his right to recover by establishing the existence of other undisputed facts which show that he is not entitled to a verdict, the court should not grant a nonsuit. Clark v. Bandy, 196 Ga. 546 (27 S.E.2d 17).
7. An averment in a petition, which, in view of other allegations, was mere surplusage and unnecessary, is to be regarded as immaterial, and need not be proved in order to withstand a nonsuit. Gallagher v. Gunn, 16 Ga. App. 600
(85 S.E. 930); Morgan v. Colt Company, 34 Ga. App. 630, 632 (5) (130 S.E. 600); Saint Clair v. State Highway Board, 45 Ga. App. 488, 489 (165 S.E. 297); Garrett v. Morris, 104 Ga. 84, 88 (30 S.E. 685).
8. The deed of an insane person, though made without fraud and for an adequate consideration, may be avoided by him upon his restoration to sanity, not only as against his immediate grantee, but also as against a bona fide purchaser for value who had no notice of the insanity. Warren v. Federal Land Bank, 157 Ga. 464 (122 S.E. 40, 33 A.L.R. 45).
 No. 14810. APRIL 4, 1944. REHEARING DENIED MAY 5, 1944.
On June 29, 1942, W. M. Sewell filed a petition in equity, and later an amendment thereto, in Fulton superior court against M. W. Anderson, C. F. Sewell, and Atlanta Federal Savings Loan Association, in which he prayed that a deed, dated June 23, 1937, given by him to M. W. Anderson, and a deed to the same land, dated July 7, 1937, by Anderson to C. F. Sewell, be delivered up and canceled as null and void. While Atlanta Federal Savings 
Loan Association was made a party defendant, no substantial relief was prayed against that corporation; and the petition stated that this defendant was not a party to the fraud alleged to have been perpetrated by the other defendants, and that it made a loan and took a security deed from C. F. Sewell in good faith. A further reference to this will be made later.
The petitioner alleged that on June 2, 1933, he was adjudged insane by the court of ordinary of Fulton County; and that he thereafter served about two years of confinement in the State sanitarium *Page 625 
at Milledgeville, Georgia, being two or three times released, or "furloughed," for short periods. He also alleged fraud and collusion on the part of the defendants, Anderson and C. F. Sewell; that C. F. Sewell, who was his brother, had himself appointed guardian of the plaintiff's person and property; that both knew that he was insane and mentally incapable of making a valid deed to Anderson; that he did not have mind and reason sufficient to understand the nature and consequences of his act, so that both deeds should be delivered up and canceled as void; that C. F. Sewell, while the plaintiff's guardian, went to Milledgeville for the purpose of having the plaintiff discharged from the State Sanitarium, knowing that he had not regained his sanity, and was so advised at said institution, and had access to its records showing that the plaintiff was merely "improved;" that he fraudulently represented to the court of ordinary that the plaintiff was then sane and able to manage his business affairs, and fraudulently induced the plaintiff to join in an application for the discharge of his guardian and to adjudicate the plaintiff sane; and that said adjudication was obtained. A copy of the petition, returnable to the September-October term, 1942, of Fulton superior court, was duly served on each of the defendants; but Anderson did not file an answer until the case was called for trial at the September-October term, 1943. When the case was called for trial, the plaintiff made an oral motion to direct a verdict against Anderson, and excepted pendente lite to a denial of this motion. The plaintiff's counsel then made the following motion: "That the defendant. M. W. Anderson, is not entitled to appear and defend said case, because the defendant Anderson had not heretofore, at the return term of said court, filed his answer, paragraph by paragraph, as required by law and process of the court served upon him in this case." Anderson's counsel contended that Anderson mistakenly believed he had employed counsel to represent him in the case. The court allowed Anderson's answer to be filed, and the plaintiff excepted pendente lite to this ruling. The order excepted to reads as follows: "Answer of defendant, Anderson, allowed and ordered filed, this October 4, 1943, it appearing that no judgment of default has been entered in said case." As to Atlanta Federal Savings Loan Association, the plaintiff offered, in the event of a cancellation of the deeds and a holding that title to the property covered *Page 626 
thereby is in the plaintiff, to assume the payment of the balance of the unpaid portion of the loan obtained by C. F. Sewell from said association. A general demurrer by C. F. Sewell to the petition as amended was overruled, and not excepted to. On October 4, 1943, Anderson made a motion in the nature of a general demurrer to dismiss the amended petition as to him, which was overruled. A second amendment, thereafter filed, added to the petition the following prayer: That the judgment of the court of ordinary, entered in April, 1935, declaring the plaintiff capable of managing his business affairs, be set aside by the court. This amendment was disallowed, and the plaintiff filed exceptions pendente lite. The petition did not allege that the plaintiff was in sane at the time of its filing; nor did it so appear from the evidence On the contrary, it was shown at the trial that he had in fact regained his sanity.
The testimony of several witnesses was introduced by the plaintiff. Mrs. Sewell, his divorced wife, testified: "I did not have anything to do with getting him [plaintiff] out the last time. I asked his people not to get him out until they were sure he was completely well. . . I lived with him three months preceding the time the deed was made. Just before the deed was made I lived with him for some time. I don't know how many months. From my knowledge of him, and my association with him, and hearing and observing him, I would testify he was insane at that time. . . I had left him approximately two weeks before the deed was signed. I don't know it was two weeks; but I know it was approximately two weeks. . . I asked C. F. Sewell to take him back to the hospital, but he refused to help me." Attorney Hudson testified that he represented the plaintiff's wife in two suits against her husband, one filed in September, 1937, and the other in April, 1938; that, between the time of filing the first and the second suits, he had talked with W. M. Sewell; and that in his opinion he was a man of unsound mind. After examining the pleadings in those cases, he testified that he had so alleged in the suit filed in September, 1937, and had asked for the appointment of a guardian ad litem. He further testified: "As to whether I talked with Mr. W. M. Sewell enough to form any opinion as to whether or not he had mind and reason sufficient to clearly understand the nature and quality of his acts, and the consequences of *Page 627 
his acts, my recollection is that I had two conferences with Mr. W. M. Sewell. I believe he was the husband of the Mrs. Sewell I represented. It has been four or five years ago, or maybe longer. I saw him several times on the street near where Mrs. Sewell was employed. My recollection is that it was a printing concern at that time. I don't think I had but two lengthy conversations with Mr. Sewell, but I formed a very definite opinion in my talks with Mr. Sewell with reference to his mental state, and that opinion was and still is, that he was insane. I would say at that time that he could not clearly understand the nature and consequences of his act in selling the property and making a deed; that is my opinion."
The plaintiff's daughter testified: "I would say, at the time my mother and I were living with my father, he was such an insane man that he should have been recommitted to the hospital. My mother didn't have him recommitted because my uncle seemed to think he was sane, and we gave him an opportunity to find out. He was the one that had him dismissed from the hospital."
The plaintiff himself testified: "I am not trying to say I am insane this morning. On the contrary, I think I am sane, as far as I know." And with reference to the loan procured from Atlanta Federal Savings Loan Association, he testified: "The money I got, I spent it somewhere; I spent $300 of it for the divorce out in Arkansas, and railroad fees, and hotel bills. . . As to whether I had any part of this money left at the time I regained my sanity — when I came back, I didn't have any part of it left; I was broke. From Arkansas I went to Chicago. I had no business in Chicago. When I landed back here I didn't have any of this money, and I didn't have anything to show for it, nothing except the divorce. I had that in my pocket. I had not invested in anything. I didn't have any means of paying any of it back to anybody . . . At the time I signed this deed to Mr. Anderson, I was partially insane. I didn't have any clear knowledge of what I was doing, or that I had sold the property. I didn't sell it, that I know of. I was trying to get a loan on it. I was about half crazy, and I don't remember, that is the best I can tell. As to whether I was conscious that I was parting with the title, I was conscious part of the time, and part of the time I was not conscious. I had the same kind of mind I had down there. I was not conscious that I had sold it — I didn't know I was selling it. I done *Page 628 
what he told me. . . I am not in position to offer to restore the status, I only have about enough to get back to work."
After the plaintiff had offered evidence and announced that his testimony was closed, counsel for the defendants made a motion for a nonsuit, which the court directed, and to this judgment the plaintiff excepts. Error is also assigned on the foregoing rulings to which there are exceptions pendente lite.
The several rulings of law announced in the headnotes will not be enlarged upon, since it is believed that they are directly supported by the authorities cited in connection therewith. Some effort will be made, however, to demonstrate that, taken in connection with the preceding statement of facts, the judgment about to be rendered reversing the grant of a nonsuit is a logical sequence.
It is urged that there was no offer to restore. The petition did not allege one, and a general demurrer thereto was overruled, and that ruling is unexcepted to. We are relieved of deciding whether under the circumstances shown by this record, it would ordinarily be necessary to restore or offer to restore, for as stated in Lawrence v. Boswell, 155 Ga. 690 (118 S.E. 45), "The general demurrer to that petition meant that the defendant raised the issue that these plaintiffs could not recover under the facts alleged. When that was overruled the judgment overruling it decided that the plaintiffs could recover under the facts alleged." Moreover, no such question is raised by the exception to the grant of a nonsuit. A motion for a nonsuit is not to determine whether the petition states a cause of action; it merely raises the question whether or not the plaintiff has proved his case as laid, without at the same time disclosing in the evidence other undisputed facts which show that nevertheless he is not entitled to recover.
It is also pressed upon us that the plaintiff alleged that after a judgment was had to the effect that he was a lunatic, the subsequent adjudication that his sanity had been restored was obtained by a fraud upon the ordinary, and that this allegation was not supported by proof. The answer to this contention is that the petition sought to cancel a deed on the ground that at the time of its execution the *Page 629 
maker was insane, the petition alleging in so many words that he was insane at the time the deed was executed. On the trial, there was sufficient proof on this issue to take the case to the jury. The right of the plaintiff to have the deed declared void was not dependent upon any adjudication that he was insane at the time, or that the judgment thereafter entered, purporting to declare that his sanity was restored, was obtained by fraud. The contract of an insane person, though never adjudged insane, is voidable.Warren v. Federal Land Bank of Columbia, supra, and cases there cited; Code, § 20-206. It is true that under the cited Code section a lesser burden is placed upon one seeking to attack such a deed when it is proved that its execution was after an adjudication of insanity and the placing of his affairs in the hands of a guardian, and when the facts warrant, it may be well for a plaintiff to so allege in a suit of this character; but it is not an essential allegation where as here, the plaintiff alleges that the maker of the deed was insane at the time it was made. As was said in Garrett v. Morris, supra: "We are not aware of any decision of this court or any other court that holds that a plaintiff is to be nonsuited or dismissed because he fails to prove every allegation in his declaration or petition. If he makes out a case that will entitle him to recover, that is sufficient. We think we have shown that the plaintiff's proof in this case was sufficient to authorize him to recover." Since the averment now under discussion was not necessary, in view of the other allegations of the petition, a failure to support this particular averment by proof would not entitle the defendant to a nonsuit.
The rulings of the trial court on which error is assigned are affirmed except as to the grant of the nonsuit. As to that, the judgment is reversed.
Judgment reversed in part, and affirmed in part. All theJustices concur.