## 35018. SCOTT *v.* SMALLING.

Decided June 23, 1954.

*Miller, Miller & Miller,* for plaintiff in error.

*Anderson, Anderson, Walker & Reichert, Albert P. Reichert,* contra.

NICHOLS, J. ■ In the first special ground of his motion, Scott complains that the trial judge devoted his charge more to Smalling's contentions than to Scott's, and that the charge was therefore argumentative in Smalling's favor. This ground is without merit. The judge stated to the jury that he would "not attempt to review or summarize all those contentions except insofar as is necessary to give you the law applicable to the case"; and, after giving a fair summary of the pleadings, he stated: "In charging you as I have certain specific contentions of the parties, I do not mean to exclude other contentions. You

look to the pleadings for the contentions of the respective parties." The court omitted some of Scott's allegations and some of Smalling's. As may been seen from our statement of the pleadings, Smalling set out his contentions at greater length than Scott did. In stating the substance of Scott's contentions, the court was not required to use the same number of words or lines as he used to summarize Smalling's more extensive pleadings. *Waters* v. *Bridges*, 55 *Ga. App.* 763 (5) (191 S. E. 297); *Standard Oil Co.* v. *Parrish*, 40 *Ga. App.* 814 (1) (151 S. E. 541).

■ In the second special ground of his motion for new trial, Scott contends that the court erred in permitting Smalling's counsel to question Scott on cross-examination as follows: "If the Government man looking at the books would charge you in taxes just as much under the circumstances outlined where you had put twenty-five dollars by your contention, five-thousand odd by another contention, into your pocket, then what was the purpose of committing the fraud? Now who, if you and Mr. Smalling divided it equally and it was nobody's business except yours and Mr. Smalling's and the Government would get the same amount of taxes, what was the purpose in that subterfuge?" Scott answered, "I don't know; just divided it up there; that's all." The objection was that there was no subterfuge; that the question was improper; that the books showed Smalling received his half of the profits; that Scott was entitled to reimbursement for the expenses of the job which he had paid; and that the books would speak for themselves.

The question objected to was within the scope of thorough and sifting cross-examination. Smalling by his answer challenged the accuracy of the partnership books, which did not show Scott's receipt of the payment by Dr. Brown. Scott testified that Dr. Brown paid him $9,313.67 in cash, and that he deposited $4,000 of this amount in his personal bank account, split the profit of $1,214.83 with Smalling, and stuck the rest in his pocket, without notifying the bookkeeper. Scott further testified: "That probably would save me in paying taxes; I know it would. . . I know this $5,000 didn't show on the books." The record of this particular job for Dr. Brown showed expenses of $8,098.84 and $607.41 as one-half of profits paid to Smalling, but did not show any payment received from Dr. Brown. The

payment of expenses was made by Scott through Smalling, and the omission of the books to show Scott's receipt of the price of the job would materially affect Scott's accountability. The accountant employed by the parties had to obtain this information from Dr. Brown. Scott's failure to have the bookkeeper enter the amount received from Dr. Brown may have been a negligent error, or it may have been, as suggested by Smalling's counsel in the question objected to, a fraud or subterfuge as between partners. This was for the jury to say. The court did not err in allowing this question.

■ In support of the general grounds of his motion for a new trial, Scott contends that, of the $346,000 received by the partnership for the Griffin school job, Smalling admitted having received $83,000 that he failed to account for and did not turn over to Scott. Scott contends that such admission was sufficient to make a prima facie case of accountability against Smalling under the rule of *Garrett* v. *Morris & Co.*, 104 *Ga.* 84 (30 S. E. 685), to the effect that a partner coming into possession of partnership funds is presumed to be liable therefor and must show payment, setoff, or some other legal defense to discharge himself. But if Smalling received $83,000, Scott may have received $263,000. The accountant found that Scott had received $242,000. Although the partnership books showed expenses of $333,000 on this job, there was no evidence as to whether Scott or Smalling had paid these expenses. If a prima facie case of accountability was proved against Smalling on this one undertaking, such a case was also proved against Scott and for a greater amount.

As for the whole venture, Scott testified that he did not know how much Smalling owed him, and Smalling's testimony was that he did not know how much Scott owed him. Sidney Backer, the accountant, basing his opinion in part on evidence which was not introduced, stated: "We have not been able to reconcile the expenditures between the schedule one statement, which is a summary of the contract operation, and the disbursements as reflected in the two exhibits for accountability. There is a difference; the difference there would be $30,174.87. . . One way of putting it might be that $30,000 has been paid out or spent or used in some way that is not reflected. In that case it

would not be reflected in one of the two statements, or both of the statements of accountability of the individual members of the joint venture. So actually all of these figures, being the very best that I could gather together—they don't prove anything because of [the] $30,000 figure in there. . . I would not be able on my oath to say whether the $30,000 accountability, the accountability of Mr. Smalling should be reduced or Mr. Scott should be reduced or just where it is." In reporting his examination of the partnership books, Backer made the following comment: "Payments on contracts were received and disbursements were made by both members of the joint venture. These transactions were not separated from transactions of the individual members that did not pertain to the joint venture. Transfers were made from W. C. Scott to John H. Smalling and from Mr. Smalling to Mr. Scott without sufficient supporting information to identify the transactions in a number of instances. Consequently, it was impossible to definitely establish accountability."

The evidence authorized the general verdict for the defendant, and the court properly denied a new trial.

*Judgment affirmed. Felton, C. J., and Quillian, J., concur.*