## 36398. McCORD v. HOUSING AUTHORITY OF THE CITY OF ATLANTA.

BOWLES, Justice.
In 1955 the legislature enacted The Urban Redevelopment Law, Code Ann. § 69-1101 et seq., to "provide for the rehabilitation, clearance and redevelopment of slums in cities and towns in this State." Ga. Laws, p. 354. Under The Urban Redevelopment Law a municipality was given the right to "exercise the power of eminent domain [over] any real property it may deem necessary for its purposes." Ga. Laws, p. 363; Code Ann. § 69-1108. Exercise of the power of eminent domain under this section must be pursuant to the formulation of an urban redevelopment plan which necessitates the

acquisition of specific real property to effectuate its purposes.

In 1971 the General Assembly amended Code Ann. § 69-1108 by adding subsection (c) to distinguish between the procedures to be followed in acquiring property for a public use and in acquiring property for a non-public use. The new subsection provides that when a municipality exercises the power of eminent domain over property which will not be put to public use, (1) it must "notify the owner of the real property proposed to be acquired, in writing, of the planned use of such property as set forth in the urban redevelopment plan for the urban redevelopment area wherein such property is located." Then (2) "within 30 days after being so notified, the owner of such property shall have the option of notifying the municipality, in writing, of his willingness and intention to develop and maintain such property in accordance with said urban redevelopment plan. In the event of multiple ownership of such property, unanimous agreement by the owners shall be required, and the failure of any one owner to notify the municipality, within the time limitation herein specified, of his willingness and intention to develop and maintain such property in accordance with said urban redevelopment plan shall be deemed to be a failure to exercise the option herein provided." (3) "When the owner of such real property exercises the option [above], the municipality shall make an investigation to determine the ability of the owner to develop and maintain such property in accordance with the urban redevelopment plan. In making such investigation, the municipality shall examine the financial and legal ability of such owner and such other factors as may be relevant to making such determination." (4) "If the municipality determines that the owner of such real property has the ability to develop and maintain such property in accordance with the redevelopment plan, the owner shall have the right to retain ownership of such property by executing an agreement with the municipality to develop and maintain such property in accordance with the urban redevelopment plan . . ."

In 1970 The Housing Authority of the City of Atlanta in conjunction with the City of Atlanta formulated an urban re-development plan known as The Vine City Redevelopment Plan. This plan requires The Housing Authority to "encourage a comprehensively planned and designed redevelopment of a ten-acre transit related multi-use commercial/residential complex directly south of the Vine City Transit System." The Vine City Plan was revised a number of times and in April 1977 The Housing Authority notified the individual owners (approximately 50) of each parcel comprising the ten-acre tract that the city intended to acquire their property either by voluntary agreement or by condemnation

proceedings to use in effectuating the Vine City Plan. Owners of the individual parcels were informed that "planned use of the property for redevelopment is industrial." At this time The Housing Authority also informed every owner of land within the ten-acre tract that under Code Ann. § 69-1108 (c) (2) they had the option of notifying The Housing Authority of "their willingness and intent to develop and maintain the property in accordance with the Plan." The Housing Authority did not inform the individual owners of the size of the tract the Authority intended to develop; the Authority merely advised each owner that it was interested in his individual parcel.

Appellants, three tenants in common, are the owners of a 47' by 100' parcel of land contained in the proposed Vine City Redevelopment tract. They sent timely notification to The Housing Authority of their intention to develop and maintain their property in accordance with the Vine City Plan; appellants requested that The Housing Authority keep them apprised of specific developments in the Plan so that they could act in accordance with it. Appellants then submitted a redevelopment proposal and statement of qualifications to The Housing Authority. Appellants were the only owners of land within the 10-acre tract who elected to exercise their option under § 69-1108 (c). All other owners voluntarily agreed to sell their land to The Housing Authority.

One year after notifying appellants of their option under § 69-1108 (c) The Housing Authority wrote appellants to advise them that they had not properly exercised the option as they had not obtained the agreement of all other owners of the property in the 10-acre tract to develop their property in accordance with the Plan. The Housing Authority stated that "any proposed use of the property must be a 10-acre tract comprehensively planned," and that development by an owner of his individual parcel as appellants proposed would be prohibited as "spot planning and design." The Housing Authority further notified appellants that unless it received timely notice of their intention to comply with the Vine City Plan, i. e., notice of an agreement between appellants and all other owners of the 10-acre tract to develop the property themselves, it would take the necessary actions to acquire their parcel.

In August 1978 appellants obtained a temporary restraining order against The Housing Authority to enjoin them from exercising the power of eminent domain with respect to their property.

On September 7, 1979 the City of Atlanta ran a newspaper advertisement stating that it would accept bids from private developers for purchase and proposals for redevelopment for apartment or highrise housing to be constructed on approximately eight acres of the Vine City tract.

Appellants filed suit in the Superior Court of Fulton County to permanently enjoin The Housing Authority from seeking to exercise the power of eminent domain over their property. The trial court denied the injunction finding that, as a matter of law, appellants' property was "inadequate to comply with any type of development allowed by the [Vine City] Plan." The court further found that the word "property" in Code Ann. § 69-1108 (c) as applied to the facts of this case refers to the entire ten-acre tract rather than to appellants' parcel. The court also found that "the term 'multiple owners' refers to owners of each and every parcel comprising the aforesaid ten acre tract, not to the three plaintiffs owning [the parcel in question]."

Appellants bring this appeal, enumerating as error the trial court's interpretation of the statute and the ruling that, as a matter of law, their parcel of land is too small to be developed in accordance with the Vine City Redevelopment Plan.

I. This is a case of first impression. In interpreting any statute "the courts shall look diligently for the intention of the General Assembly, keeping in view, at all times, the old law, the evil and the remedy." Code Ann. § 102-102 (9).

The old law, enacted in 1955, granted an absolute power of eminent domain to municipalities, permitting them to take private property for any purpose — public or non-public — so long as the condemnation was to effectuate an urban redevelopment plan. The evil was that this *was* an absolute power. Private property could be condemned by a city, then sold to private developers who would develop it and resell it. The landowner who had the resources to develop his land in accordance with an urban redevelopment plan was denied the right to do so under the old law. In 1971 the General Assembly enacted § 69-1108 (c). This section gave a private landowner the option of retaining ownership of his land and developing it in accordance with the urban redevelopment plan when the land was to be put to a non-public use. This was the remedy. The obvious intent of the legislature was to protect the interests of private landowners when a city sought to condemn their land for a non-public use.

It must be remembered that appellants' property *belongs* to them. "History teaches us that one of the first steps necessary to be taken in the establishment of a totalitarian form of government is to abolish the right of private ownership of property. One of the most sacred and cherished rights of the citizens of this State, handed down to us by our forefathers, . . . and held inviolate by the courts of our State, was the right of private ownership of property, subject to be taken by the State or its authority for public purposes only upon just and adequate compensation being first paid." *Bailey v. Housing*

*Authority of City of Bainbridge,* 214 Ga 790 (107 SE2d 812) (1959).

Within limits, appellants are entitled to do with their property what they will. In order for the State to obtain private property it must follow certain requirements. To condemn private property for a public use, the State need only pay the owner just and adequate compensation. The right of the State to obtain private property for the public purpose of urban redevelopment is qualified by the requirement that the property owner must be permitted to develop his land himself in accordance with the proposed plan if he so desires and if he has the resources to do so.

II. The clear meaning of § 69-1108 (c) is that each owner of a parcel of land within the entire tract to be condemned and redeveloped pursuant to an urban redevelopment plan can decide for himself whether or not he wishes to develop his parcel in concert with the plan. Thus the trial court erred in finding that the word "property" referred to the entire 10-acre tract to be condemned here. The court further erred in finding that the requirement of unanimity of agreement in the case of "multiple owners" meant that all owners of all parcels in the tract had to agree to develop the land themselves.

The fact that appellants' parcel is relatively small may have led the trial court to this erroneous finding. But what if appellants owned a nine and a half acre parcel of the 10 acre tract and the other one-half acre parcel was owned by 30 people? It seems unlikely that the legislature would have intended that appellants forfeit their right to develop their property simply because they could not get 30 people to agree about one-half acre.

III. Appellants next contend that the trial court erred in finding, as a matter of law, that their parcel is too small to develop in accordance with the Vine City Redevelopment Plan. Appellants concede that if, when the Vine City Plan is finalized and ready to be implemented, it is determined that they cannot develop their property within the overall Plan they will be forced to sell their parcel to The Housing Authority. However, appellants argue, until the Vine City Plan is fully formulated the court cannot say as a matter of law that appellants are unable to develop their property in accordance with the Plan or that appellants' land is inadequate to be developed in concert with the Plan. We agree. Until a detailed plan is made by a private developer for development of the remainder of the Vine City tract and adopted by The Housing Authority it cannot be determined that appellants are incapable of developing their land in accordance with the Plan. The trial court erred in finding that there were "no possible uses" for which appellants' property could be developed in concert with the Vine City Plan.

IV. Accordingly we agree with appellants' contention that the trial court erred in finding that The Housing Authority "through its notice procedure and its actions in this case complied with each and every aspect of [Code Ann.] § 69-1108."

*Judgment reversed. All the Justices concur.*

SUBMITTED JUNE 27, 1980 — DECIDED SEPTEMBER 24, 1980 — REHEARING DENIED OCTOBER 15, 1980.

*D. W. Latimore, Jr.,* for appellant.
*Lenwood Jackson,* for appellee.