SCHWARTZ, Chief Judge.
The defendant owners appeal, see Fla.R. App.P. 9.130(a)(3)(C)(ii), from an order authorizing the quick-taking, sec. 74.011 et seq., Fla.Stat. (1981), by Dade County of certain parcels of their realty pursuant to a slum clearance and development project under the Community Redevelopment Act of 1969, Ch. 163, Part III, Fla.Stat. (1983); see State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla.1980) (upholding constitutionality of act). As we understand their position, the appellants do not contest (and in any event could not do so successfully) the inclusion of the property at issue within the area encompassed by the county’s development plan. See Grubstein v. Urban Renewal Agency of City of Tampa, 115 So.2d 745 (Fla.1959); School Board of Broward County v. Viele, 459 So.2d 354 (Fla. 4th DCA 1984). They contend rather that there is no “reasonable necessity,” see City of Miami v. Wolfe, 150 So.2d 489 (Fla. 3d DCA 1963), to take the fee to the land so it may be developed by other private interests under the county’s auspices and control pursuant to sec. 163.-380(1), Fla.Stat. 1981).[1] They base this argument on the fact that they have undertaken — and have the financial ability to do so — both to level the buildings which now occupy the premises and thereafter to develop the property themselves in an appropriate manner without governmental intervention. We find this argument totally without merit and affirm.
We have been cited to and are aware of no non-statutory authority which recognizes the asserted right of an owner to opt his property out of a slum clearance and community development plan, and thus to destroy the cohesion and comprehensiveness which are part of its very nature and essential to its success, on the ground that he wishes to go it alone. To the contrary, it is plain that once, as has been established in this case, a particular parcel is deemed properly subject to the exercise of the power of eminent domain, it is for the reasonable discretion of the condemning authority, and not the landowner, to determine *760 whether the property should be condemned, and, even more obviously, to control, within the bounds of its statutory authority, the manner in which the land should be developed after it is. See Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929). The point is made clear by comparing the Florida law with that involved in McCord v. Housing Authority of the City of Atlanta, 246 Ga. 547, 272 S.E.2d 247 (1980). There the court applied a specific Georgia statute which, amending a previous provision which granted no such privilege,
gave a private landowner the option of retaining ownership of his land and developing it in accordance with the urban redevelopment plan....
272 S.E.2d at 250. The absence of a similar provision in this state is strong support for our holding that no equivalent right exists here.
In Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954), the court held in language quoted and relied upon at length in State v. Miami Beach Redevelopment Agency, 392 So.2d at 889-91, and which we consider controlling here:
Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end. See Luxton v. North River Bridge Co., 153 U.S. 525, 529-530, 14 S.Ct. 891, 892, 38 L.Ed. 808; United States v. Gettysburg Electric R. Co., 160 U.S. 668, 679, 16 S.Ct. 427, 429, 40 L.Ed. 576. Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine. Here one of the means chosen is the use of private enterprise for redevelopment of the area. Appellants argue that this makes the project a taking from one businessman for the benefit of another businessman. But the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established. See Luxton v. North River Bridge Co., supra; cf. Highland v. Russell Car Co., 279 U.S. 253, 49 S.Ct. 314, 73 L.Ed. 688. The public end may be as well or better served through an agency of private enterprise than through a department of government — or so the Congress might conclude. We cannot say that public ownership is the sole method of promoting the public purposes of community redevelopment projects. What we have said also disposes of any contention concerning the fact that certain property owners in the area may be permitted to repurchase their properties for redevelopment in harmony with the overall plan. That, too, is a legitimate means which Congress and its agencies may adopt, if they choose.
In the present case, Congress and its authorized agencies attack the problem of the blighted parts of the community on an area rather than on a structure-by-structure basis. That, too, is opposed by appellants. They maintain that since their building does not imperil health or safety nor contribute to the making of a slum or a blighted area, it cannot be swept into a redevelopment plan by the mere dictum of the Planning Commission or the Commissioners. The particular uses to be made of the land in the project were determined with regard to the needs of the particular community. The experts concluded that if the community were to be healthy, if it were not to revert again to a blighted or slum area, as though possessed of a congenital disease, the area must be planned as a whole. It was not enough, they believed, to remove existing buildings that were insanitary or unsightly. It was important to redesign the whole area so as to eliminate the conditions that cause slums — the overcrowding of dwellings, the lack of parks, the lack of adequate streets and alleys, the absence of recreational areas, the lack of light and air, the presence of outmoded street patterns. It was believed that the piecemeal approach, the removal of individual structures that were offensive, would be only a palliative. The entire area needed re *761 designing so that a balanced, integrated plan could be developed for the region, including not only new homes but also schools, churches, parks, streets, and shopping centers. In this way it was hoped that the cycle of decay of the area could be controlled and the birth of future slums prevented. Cf. Gohld Realty Co. v. City of Hartford, 141 Conn. 135, 141-144, 104 A.2d 365, 368-370; Hunter v. Norfolk Redevelopment Authority, 195 Va. 326, 338-339, 78 S.E.2d 893, 900-901. [emphasis supplied]
Id. 348 U.S. at 32-36, 75 S.Ct. at 102-04, quoted at 392 So.2d at 890-91. Accord, Hawaii Housing Authority v. Midkiff — U.S. -, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (applying Berman rule to state action); eases collected, 2A Nichols, Law of Eminent Domain § 7.43[1] (3d ed. 1983).[2]
Essentially upon the conclusions that the property was properly subject to the condemnation process and that, since that is true, what happens to it thereafter is the province of the authority which has properly obtained its ownership, the order under review is
Affirmed.

. Any county, municipality, or community redevelopment agency may sell, lease, dispose of, or otherwise transfer real property or any interest therein acquired by it for a community redevelopment project or in a community redevelopment area to any private person, or may retain such property for public use, and may enter into contracts with respect thereto for residential, recreational, commercial, industrial, educational, or other uses, in accordance with the community redevelopment plan, subject to such covenants, conditions, and restrictions, including covenants running with the land, as it may deem to be necessary or desirable to assist in preventing the development or spread of future slums or blighted areas or to otherwise carry out the purposes of this part.

. The appellants complain to us about their inability to reach an agreement with responsible county authorities — which they argue is the fault of the county — for them to act as the developer of "their” property after its condemnation. See note 1 supra. It should be noted, however, that (a) this controversy does not bear upon the county’s ability to acquire the property in the first place, which is the only issue now involved and (b) nothing in this opinion may therefore be taken to bear upon any post-taking constitutional, statutory, or regulatory rights of the appellants in this regard.
The owners also argue that the condemnation proceeding unfairly deprives them of the benefits of their foresight in assembling these parcels in anticipation of the improvements in the area caused, inter alia, by a new transit station and by the projected results of the very development project involved in this case. The short answers are that, again, these considerations are unrelated to the point now at issue and that the appellants’ perspicacity will be rewarded in the form of an enhanced condemnation award for their property. See Department of Transportation of State of Florida v. Nalven, 455 So.2d 301 (Fla.1984) (market value includes increase attributed to public anticipation of project which is basis of condemnation proceeding).