A96A1429. THORNTON v. CARPENTER et al.
(476 SE2d 92)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Ernie Pauline Quinn Thornton b/n/f Wendell Thornton appeals from the order of the superior court granting summary judgment to appellees/defendants Donald R. Carpenter and Eddie Edenfield. This is an action, brought by an allegedly incompetent person by her guardian and next friend (see generally *Wynne v. Fisher*, 156 Ga. 656, 659 (1) (119 SE 605)), to set aside a deed of gift of real property from appellant to her son and attorney in fact, James

Lee Thornton who is now deceased, to set aside all subsequent conveyances of the property, and to obtain injunctive relief. The trial court granted the motions for summary judgment holding that Carpenter was a bona fide purchaser for value and that Edenfield, being Carpenter's grantee, was likewise protected notwithstanding that he purchased his portion of the real property after a lis pendens had been filed against it.

In November 1989, without the knowledge of her now sole surviving son Wendell Thornton, appellant Ernie Thornton personally transferred the property at issue to her son and attorney in fact, James Thornton. James Thornton died in November 1992; he was survived by his wife, Wanda Thornton, who was appointed executrix of his estate. In January 1993, defendant Moody paid $5,000 for an option to purchase the property. On February 5, 1993, Moody received a letter from the attorney of Wendell Thornton notifying him that Wendell questioned his mother's competence to convey the property and if the matter could not be resolved, suit would be initiated to set aside the 1989 conveyance. Moody contacted Wanda Thornton who advised him there was no basis for Wendell's claim, and that unless suit was filed the $5,000 would not be returned to Moody. Moody subsequently obtained a title search to the property.

On February 11, 1993 the property was conveyed to Moody by Wanda Thornton by means of a warranty deed; Moody pledged the property as collateral to the Broxton State Bank by deed to secure a $44,000 debt. That same day, Moody also pledged the property as collateral to Jimmy Bryant as a so-called second mortgage by executing a deed to secure a $37,500 debt with power of sale. Prior to exercising his option to purchase, Moody was aware appellee Carpenter was looking for property for a farm, and had a "deal" with Carpenter.

On February 12, 1993, Moody executed a quitclaim deed conveying the property to appellee Carpenter. Moody did not inform Carpenter about Wendell Thornton's claim or of the letter from his attorney. Although no transfer tax was paid on the deed to Carpenter, there exists evidence of record that he tendered $1,000 for the property and timely commenced and continued making the payments due on the security interest held by the bank and to which the property remained subject. This payment scheme became known to and was, at least, tacitly consented to by the Broxton State Bank. However, Moody concedes that he remained personally liable on the instruments of indebtedness if Carpenter failed to make timely payments. Moody further testified that he made a profit of ten percent or $7,500 on the property sale to Carpenter as the property cost only $75,000 and the mortgage loan was for $82,500. Carpenter, by way of affidavit, stated under oath that he purchased the property for a *total* consideration of $83,500, and that he had no notice either before or dur-

ing the transaction of sale of any claim against the property. Subsequently, Moody learned that appellee Edenfield wanted to purchase some property; Moody contacted Carpenter and ascertained the latter would sell a corner of the land to Edenfield.

On April 23, 1993, Wendell Thornton was appointed as emergency and permanent guardian of the person and property of appellant Ernie Thornton who was judicially determined to be incapacitated; appellant's incapacity was determined to be total and complete as contemplated by OCGA § 29-5-1. See generally OCGA §§ 29-5-3 (a) and (b) (6); 29-5-8. The subsequent order appointing Wendell Thornton as permanent guardian expressly included the power "to receive, collect and take charge of the estate, both real and personal" of Ernie Thornton. Appellant Ernie Thornton's attending physician, by way of affidavit, opined that Thornton has lacked the mental capacity either to comprehend or make cognitive decisions concerning her personal affairs since at least March 16, 1985. Wendell Thornton by way of affidavit opined, based inter alia on the casual communications with his mother and the letter from his brother, James Thornton, wherein his mother's inability to recognize James was acknowledged, that his mother, Ernie Thornton, has not been mentally competent since January 1984. He testified, by way of deposition, and rendered essentially the same opinion and same reasons therefor, except it was clarified he also based his opinion, as to his mother's lack of competency at the time she conveyed the property to James Thornton, on the statements of the attending physicians and of friends. He also stated that his mother was not competent when he and James Thornton, as co-executors of their father's estate, previously had deeded the property to her, and she was not competent when she executed the power of attorney to James Thornton.

On May 12, 1993, Carpenter conveyed a portion of the property to appellee Edenfield by warranty deed for $10,000. This warranty deed was not filed until June 3, 1993. Edenfield then executed a deed to secure debt on behalf of Carpenter for $8,000 and apparently paid him the remaining $2,000 in cash. By way of affidavit, Edenfield stated that neither before nor during the transaction of sale did he have notice of any claim against the property. On May 19, 1993, this suit was filed in superior court and a lis pendens notice was duly recorded pursuant to the provisions of OCGA § 44-14-610.

Appellant enumerates that the trial court erred by granting Carpenter's and Edenfield's motions for summary judgment, by holding as a matter of law that Carpenter and Edenfield were entitled to the protection of bona fide purchasers, by holding that no question of fact existed as to the relationship of agency between defendants Moody and Carpenter whereby Carpenter would be charged with the notice given Moody as to appellant's claim, and by failing to hold that the

personal representative of an incompetent grantor could void a deed made by said grantor. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474); "the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843).

2. As the parties appear to concede that Edenfield took title with notice of this pending action, the basic issue before us is whether Carpenter is both a bona fide purchaser for value *and* entitled to protection against the claims of an incompetent grantor; if so, the trial court did not err in granting summary judgment to Edenfield and Carpenter.

(a) Appellant's contention that a genuine issue of material fact exists as to an agency relationship existing between Moody and Carpenter, which would cause Carpenter to be charged with the notice given Moody as to appellant's claim, is without merit. Appellee Carpenter stated under oath in his affidavit that at no time prior to his purchasing of the property had Moody acted as his agent in regard to the property at issue. This statement stands legally unrefuted. A denial of an agency relationship, made by a purported party thereto, is a statement of fact sufficient to support a motion for summary judgment when uncontradicted. See *McDaniel v. Peterborough Cablevision*, 206 Ga. App. 437, 439 (425 SE2d 424). " 'In such circumstances the adverse party may not rest on his pleadings, but by response must set forth specific facts revealing a genuine issue for trial. Exhibiting the mere possibility of a control situation falls short of the specific facts required.' " Id. Further, " '[a] bare assertion of the existence of an agency relationship, when made by an outsider to the alleged relationship, is not a statement of fact, but merely an unsupported conclusion of law.' " *Young v. John Deere Co.*, 221 Ga. App. 157, 159 (3) (471 SE2d 19).

(b) We need not here address the validity of the power of attorney obtained from Ernie Thornton by her son, James, as the property in question was conveyed directly by Ernie to her son, James, and was not conveyed by James to himself while acting under color of authority as an attorney in fact. The trial court held and we agree that, as a general rule, a power of attorney "merely authorizes another [agent] to do what the grantor [principal] could do with respect to the recited subject matter. The grantor retains the right to act in [his] own name with respect to that subject matter, notwithstanding [his] execution of the power of attorney." The trial court did not err in concluding that "the recorded power of attorney did not

impose upon persons dealing with the property the burden of making inquiries into subsequent transactions between plaintiff [Ernie Thornton] and the late [James Thornton] involving the same property [here at issue]." *McGahee v. Walden*, 216 Ga. 352 (116 SE2d 559) and *Harrison v. Harrison*, 214 Ga. 393 (105 SE2d 214), cited by appellant, are factually distinguishable and not controlling.

(c) The conveyance by quitclaim deed to grantee, appellee Carpenter, did not standing alone constitute constructive knowledge to Carpenter of any claims pending against the grantor, defendant Moody. See *Mathis v. Blanks*, 212 Ga. 226, 228 (6) (91 SE2d 509); *Marshall v. Pierce*, 136 Ga. 543, 548 (4) (71 SE 893); see also *Archer v. Kelley*, 194 Ga. 117, 122 (1) (21 SE2d 51). There exists no genuine issue of material fact that Carpenter had either actual or constructive knowledge of appellant's claims at the time of the conveyance of the property to him.

(d) Pretermitting whether appellee Carpenter was a bona fide purchaser for value (having paid only a $1,000 down payment for the property and apparently having agreed to take the property subject to a certain secured indebtedness thereon and thereafter having made timely payments on the indebtedness; compare *Ross v. Rambo*, 195 Ga. 100 (23 SE2d 687)) is whether a genuine issue of material fact exists whether Ernie Thornton was incompetent at the time of the transaction and, if so, whether a bona fide purchaser is protected against the claims of an incompetent.

The general provisions of OCGA § 23-1-19 (formerly Code Ann. § 37-114) are not here controlling. See *Chestnut v. Weekes*, 183 Ga. 367, 371 (2) (188 SE 714). Rather, OCGA § 13-3-24 (a) pertinently provides: "The contract of . . . a mentally incompetent person who has never been adjudicated to be insane . . . or mentally incompetent to the extent that he is incapable of managing his estate as prescribed by this Code is not absolutely void but only voidable, except that a contract made by such person during a lucid interval is valid without ratification." " 'The contract of an insane [or mentally incompetent] person who has never been adjudged insane by any tribunal of competent jurisdiction is voidable after his death, at the instance of his heirs at law, if there be no legal representative of said insane [or mentally incompetent] person. . . . The deed of an insane [or mentally incompetent] person, though made without fraud and for an adequate consideration, may be avoided by his heirs, not only as against his immediate grantee but also as against *bona fide purchasers* for value and without notice of such insanity. "The fairness of the defendant's conduct cannot supply the plaintiff's want of capacity." And "[a] person whose mind is so unsound as not to have capacity to contract is incapable of making a binding conveyance." ' " *Tate v. Potter*, 216 Ga. 750, 753 (2) (b) (119 SE2d 547); *Sewell v. Anderson*, 197

814

Ga. 623, 624 (8), 629 (30 SE2d 102); see *Morris v. Mobley*, 171 Ga. 224 (2, 5) (155 SE 8); *Warren v. Federal Land Bank &c.*, 157 Ga. 464, 465 (3) (a), 469-472 (122 SE 40). Whether Ernie Thornton was mentally incompetent and did not have the requisite mental capacity to contract at the time the deed was executed is a question for jury resolution. *McCraw v. Watkins*, 242 Ga. 452 (1) (249 SE2d 202); *Jones v. Union Central Life Ins. Co.*, 178 Ga. 591 (1) (173 SE 845). Nor is it necessary for appellant, the original grantor, to return to these third-party bona fide purchasers the consideration paid to their grantors; restoration need be made, if at all, only to the immediate grantee from the insane or mentally incompetent person. *Tate*, supra at 753 (2) (b). Further, where, as here, the grantor was not judicially adjudged incompetent before the conveyance, even as to an immediate grantee, restitution is not required if, for example: (1) the grantee had made no tender of a valuable consideration, or (2) the immediate grantee entered the contract with knowledge of the grantor's incompetency. *Dean v. Goings*, 184 Ga. 698 (2, 3) (192 SE 826); see generally *Atlanta Banking &c. Co. v. Johnson*, 179 Ga. 313, 318-319 (175 SE 904). These issues likewise are for jury resolution. See *Metter Banking Co. v. Millen Lumber &c. Co.*, 191 Ga. App. 634, 638 (2) (b) (382 SE2d 624).

*Judgment reversed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 18, 1996.

*Ken W. Smith*, for appellant.

*Morris & Tillman, Keith M. Morris, William K. Blackstone*, for appellees.