FINAL COPY
294 Ga. 455

S13A1745.  DARLING INTERNATIONAL, INC. v. CARTER et al.

BENHAM, Justice.

This case involves a dispute over title to a 7.63 acre parcel of land located in Bacon County.  The parcel was originally part of a 95.125 acre parcel owned by H.S. Carter, now deceased, that was taken by Bacon County via eminent domain proceedings commenced in 1973.  As a result of the condemnation proceedings, Bacon County acquired a total of 2522.3 acres for the purpose of creating a public recreation project known as Lake Alma and the 95.125 acre Carter parcel was just one of the parcels condemned for this purpose.  The record shows that the proposed Lake Alma was part of a larger urban development project that received funds from the Federal Model Cities Program so that the City of Alma and Bacon County could execute a development plan that included, among other things, an industrial park, a waste water treatment plant, and improvement of the local airport, in addition to construction of Lake Alma.  The other projects were completed but, due to protracted litigation and other reasons, the Lake Alma project was abandoned and never constructed.  In

the meantime, in 1985, the county granted an undivided one-half interest in the Lake Alma tract to the City of Alma. After the project was abandoned, at the request of the city and county, the General Assembly passed an amendment to OCGA § 36-9-3, effective July 1, 1992, that permitted counties to sell back to the original owners land that had been acquired for creation or development of a lake, such as the Lake Alma project, but the legislation failed to provide for repurchase of land by the heirs of the original owners. See Ga. L. 1992, p. 1348, § 1. By that time, H.S. Carter was deceased, and the 95.125 acre parcel originally owned by him was apparently one of the only parcels condemned for construction of Lake Alma that was not repurchased by the original owner.

The chain of title to the 7.63 acres at issue in this appeal reflects the following conveyances: On December 31, 2003, the county and city each executed quitclaim deeds purporting to convey the 7.63 acres to the Bacon County Development Authority, and on that same day the Development Authority executed a warranty deed for the property to Southeastern Maintenance and Construction, Inc. In 2005, Southeastern Maintenance granted an easement over a portion of the property to appellant Darling International, Inc. Also in 2005, Southeastern Maintenance executed a warranty deed

purporting to convey 3.048 acres of the disputed property to Darling, and in 2007 it executed a warranty deed conveying the remainder of the 7.63 acres to Darling.

On July 1, 2010, OCGA § 36-9-3 was amended to grant the heirs of the original landowners the right to repurchase land such as that which was condemned for Lake Alma (OCGA § 36-9-3 (g) (3) (B)). See Ga. L. 2010, p. 746, § 1/HB 703. Shortly thereafter, certain heirs of H. S. Carter sought to repurchase Mr. Carter's original 95.125 acre parcel. On December 21, 2010, the City of Alma executed a quitclaim deed to Bacon County conveying its undivided interest in the 95.125 acres and, that same day, Bacon County executed a quitclaim deed conveying all of its undivided interest in the property to the H.S. Carter heirs who are the appellees herein. The quitclaim deed states that Bacon County intends "to convey to Grantees only all properties which it obtained from their father Hoke Carter by condemnation . . . Less & Except any portion of said properties which have been previously legitimately conveyed by the Grantor." The Carter heirs then filed a petition to quiet title and for ejectment against Darling and Southeastern Maintenance with respect to the 7.63 acres. The parties stipulated to the undisputed material facts, and each

3

party filed a motion for summary judgment. Darling asserted it was entitled to summary judgment with respect to the Carter heirs' quiet title action and their claim for ejectment because, as a result of the county's previous conveyance of the disputed property to the Development Authority and the subsequent chain of conveyances by which Darling ultimately obtained title, the Carter heirs do not have title to that property. The Carter heirs asserted they were entitled to summary judgment, and that Darling's motion should be denied, because the previous conveyances are not valid. The Carter heirs argued that the previous conveyance to the Development Authority was invalid as a result of the county's failure to follow the requirements of OCGA § 36-9-2 to enter an order on its minutes authorizing disposal of the real property. They further argued that the conveyance of the previously condemned property to Southeastern Maintenance was invalid because it amounted to a legally impermissible sale of condemned property to private developers for private use and was not a transfer for a proper alternative public use.[1] Darling argued that these previous conveyances are

---

[1] The conveyance from Bacon County to the Bacon County Development Authority and the subsequent conveyance to Southeastern Maintenance and Construction, Inc. occurred on the same day. The Carter heirs assert, and Darling appears to concede, that Bacon County utilized the Bacon County Development Authority as a "straw man" to convey the property to Southeastern Maintenance for purported economic development purposes.

4

legally valid. Further, Darling asserted it was entitled to judgment in its favor because it was a bona fide purchaser of the property without knowledge of the Carter heirs' interest in the property.[2]

Without addressing Darling's bona fide purchaser argument, the trial court entered judgment in favor of the Carter heirs along with a decree that title to the property vests in them and is superior to Darling's claim of title. The court found that the county's 2003 conveyance to the Development Authority was invalid and did not serve to pass title because the county failed to follow the procedures required by OCGA § 36-9-2 to record on its minutes the authorization to convey the property, which deficiency was never corrected by ratification. Further, the court found that the subsequent attempt to transfer the property to Southeastern Maintenance was invalid because neither the county nor the city ever formulated an economic development plan that encompassed an alternative public use of the property.

1. (a) The first issue raised on appeal is whether, despite Bacon County's

_____

[2] Although the attorney representing the Carter heirs states in a supplemental brief that the issue of Darling's status as a bona fide purchaser was first raised on appeal and was "never presented to the trial court for determination," the record reflects this issue was raised and supported by argument and citations to legal authority in Darling's brief responding to the Carter heirs' cross-motion for summary judgment.

failure to comply with the requirements of OCGA § 36-9-2 when it conveyed its undivided one-half interest in the property to the Development Authority, Darling is a bona fide purchaser for value and without notice of this irregularity so that its title is superior to that of the Carter heirs. Pursuant to OCGA § 23-1-20, "[a] bona fide purchaser for value without notice of an equity will not be interfered with by equity." At the time Darling purchased the property for value, no other outstanding interest was reflected in the recorded chain of title. At the time of the 2003 conveyance of the property to Southeastern Maintenance, the 2010 amendment to OCGA § 36-9-3 (g), permitting disposition to the heirs of the original owner of property that had been condemned for construction of a recreational lake but which was no longer needed for such a purpose, had not yet been passed. See Ga. L. 2010, p. 746, § 1/HB 703. "[F]ailure to use the lands for the purpose for which they were condemned does not cause title to revert to the original owners." *Galloway v. Bd. of Commrs. of Banks County*, 246 Ga. 472, 473 (271 SE2d 784) (1980), citing *Sadtler v. Atlanta*, 236 Ga. 396 (223 SE2d 819) (1976). Accordingly, Darling asserts the Carter heirs' interests did not arise until 2010 and thus were nonexistent at the times of Darling's purchases in 2005 and 2007 and that it was

6

an impossibility for Darling to have notice of an interest that did not yet exist.

First, relying upon *Head v. Lee*, 203 Ga. 191, 201 (4) (45 SE2d 666) (1947), the Carter heirs assert that because Bacon County failed either to record authority for the sale to the Development Authority on its minutes as required by OCGA § 36-9-2, or to ratify the sale at any time before the 2010 conveyance to them, the purported 2003 conveyance to the Development Authority did not pass title and the Development Authority's title is void. In *West v. Fulton County*, 267 Ga. 456, 457 (1) (479 SE2d 722) (1997), this Court noted "[t]here are no exceptions set forth in OCGA § 36-9-2 to the requirement that authorization for the conveyance of county-owned property must be duly entered on the minutes of the proper county authority." But in *West*, it was the county that sought to void the mistaken conveyance of county-owned property in a tax sale because the property, having been owned by the county, was not subject to taxation and should not have been the subject of levy and sale by the tax commissioner. And in neither *Head* nor *West* was the issue of the purchaser's status as a bona fide purchaser without notice raised or considered by this Court.

In asserting the title conveyed to the Development Authority was void, the

Carter heirs analogize the conveyance to a forged deed which, this Court has held, is a nullity that does not pass good title even to a subsequent bona fide purchaser without notice. See *Brock v. Yale Mtg. Corp.*, 287 Ga. 849 (700 SE2d 583) (2010) ("[E]ven a bona fide purchaser for value without notice of a forgery cannot acquire good title from a grantee in a forged deed, or those holding under such a grantee, because the grantee has no title to convey."). But the Carter heirs cite no authority for the proposition that county-owned property conveyed via a properly executed deed, where the order directing disposal of the property was simply not recorded on the minutes, constitutes a void conveyance that would not pass title to a subsequent bona fide purchaser for value without notice. As applied to the facts of this case, we decline to adopt such a rule. Unlike the circumstances present in the case of a forged deed, here the county possessed title to its undivided one-half interest in the property, and no issue was raised regarding the authority of the individual who executed the deed to act on behalf of the county. We also reject the attempted analogy to cases involving a deed executed by a mentally incompetent person. Those cases have held that such a deed is not void but voidable by the incompetent person or his heirs even as against a bona fide purchaser for value without notice of such incompetence.

8

See, e.g., *Sewell v. Anderson*, 197 Ga. 623, 624 hn. 8 (30 SE2d 102) (1944); *Thornton v. Carpenter*, 222 Ga. App. 809, 813 (2) (d) (476 SE2d 92) (1996). In the case of a conveyance of county-owed property that was not properly recorded in the minutes as required by OCGA § 36-9-2, the deed to the immediate grantee may be voidable in that the county or the immediate grantee may seek to invalidate the conveyance (compare *West v. Fulton County*, supra); but as to a subsequent bona fide purchaser without notice of the failure to comply with the statute, the deed is not void.

(b) Second, even if the previous conveyance to the Development Authority is not void, the Carter heirs assert Darling does not qualify as a bona fide purchaser without notice. They argue the issue is not whether Darling had notice of their claim but whether it had notice of any legal impediment to its acquiring title as against the world. According to the Carter heirs, once Darling was placed on notice that a government entity was a predecessor in title it was under a duty to determine whether the requirements of OCGA § 36-9-2 were met, and, having failed to do so, Darling was placed on constructive notice of the defect in the chain of title. No legal authority, however, is cited for this proposition. Instead, the Carter heirs seek to draw an analogy to the duty

9

incumbent upon a purchaser to confirm the validity of a guardian's appointment when the chain of title contains a deed executed by one who purports to act in the capacity of legal guardian of another. See *Chase Manhattan Mtg. Corp. v. Shelton*, 290 Ga. 544, 547-548 (2) (722 SE2d 743) (2012). But guardianship presents a special situation in which the person executing the title has no interest to convey and the execution is valid and passes title only if there has been an appointment by the probate court. See *Dickey v. Sweeney*, 16 Ga. App. 559 (85 SE 766) (1915). In such a case, it has long been held that the purchaser is "bound, at his peril" to examine the validity of the appointment. See *Dooley v. Bell*, 87 Ga. 74, 77 (13 SE 284) (1891). As noted above, no issue has been raised with respect to the authority of the individual who executed the deed conveying the property to the Development Authority to act on behalf of and bind the county. Compare *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 307 Ga. App. 307, 309 (1) (704 SE2d 823) (2010) (a warranty deed was valid on its face because it appeared to be duly executed by an officer of a corporation with authority to act, and thus there was no reason to put a good faith purchaser on notice to inquire further into its validity). Unlike a conveyance by a guardian, Bacon County owned the property in its own name

10

and did not purport to convey the property on behalf of any other person or entity.

"Any circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed." (Citations and punctuation omitted.) *Montgomery v. Barrow*, 286 Ga. 896, 897 (1) (692 SE2d 351) (2010) (an issue of fact was created as to whether the purchaser was a bona fide purchaser without notice of prior unrecorded deeds where a representative of the corporation that purchased the property admitted he had been told unrecorded deeds to the property existed). See also OCGA § 23-1-17 ("Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties."). In this case, however, it is not an unrecorded deed but a fact wholly outside the chain of title that the Carter heirs claim should have placed Darling on notice and created a duty to conduct an inquiry into it. Circumstances that have been deemed sufficient to incite a duty to inquire into facts outside the recorded deed records, or at least raise an issue with respect to the purchaser's duty to inquire, include

11

facts showing the purchaser had been informed of the existence of prior unrecorded deeds (see *Montgomery,* id.); evidence of open and notorious adverse possession of the property that should have placed the purchaser on notice of another's interest in the property (see, e.g., *Dyal v. McLean*, 188 Ga. 229 (3 SE2d 571) (1939)); and evidence sufficient to put a mortgagee on notice of a fraudulent scheme (see *Collins v. Freeman*, 226 Ga. 610, 611-612 (3) (176 SE2d 704) (1970)). But we decline to hold that the existence, within the chain of title, of a conveyance by a county is a circumstance that requires a subsequent purchaser to inquire into whether the county complied with the requirements of OCGA § 36-9-2 to enter an order on its minutes authorizing disposal of the real property, and that failure to inquire defeats the subsequent purchaser's status as a bona fide purchaser without notice.[3] Consequently, the trial court erred in concluding that the Carter heirs' title is superior to that of Darling's as a result of Bacon County's failure to comply with the requirements of OCGA § 36-9-2

---

[3] Further, we reject the Carter heirs' assertion that title did not pass on the second of the two conveyances of title to Darling because the grantor does not appear in the chain of title. The title dated August 1, 2007 in Darling's favor shows "Southeast Maintenance and Construction, Inc." as the grantor instead of Southeastern Maintenance and Construction, Inc., which was the true previous owner of the property. "[A] mere misnomer of a corporation in a written instrument is not material or vital in its consequences, if the identity of the corporation intended is clear or can be ascertained by proof." (Citations and punctuation omitted.) *Deutsche Bank Nat. Trust Co.*, supra, 307 Ga. App. at 310 (1) (a); see also *Hawkins v. Turner*, 166 Ga. App. 50, 51-52 (1) (303 SE2d 164) (1983).

with respect to its 2003 conveyance of its interest in the property to the Bacon County Development Authority.[4]

2. The trial court also erred in finding the 2003 conveyance to Southeastern Maintenance was invalid as a result of the governing authorities' failure to formulate a new economic development plan. The 1973 condemnation petition reflects condemnation of the subject property was sought to acquire fee simple title for the purpose of using it for a public lake, park, and recreation area. While the petition states only that it was filed pursuant to what is now OCGA § 22-2-100 et seq., the Special Master provisions for eminent domain proceedings, the parties stipulated to the fact that the Lake Alma project was part of a development plan formulated by the City of Alma for the purpose of utilizing funds awarded under the federal Model Cities Program to combat the effects of blighted neighborhoods in participating cities. Construction of Lake Alma was one of four projects included in the development plan. The other projects were improvement of an industrial park, upgrade of water and sewage

_____

[4] Further, we note that even if the County's failure to comply with the requirements of OCGA § 36-9-2 was sufficient to invalidate its quitclaim deed to the Development Authority or defeat the subsequent purchaser's status as a bona fide purchaser without notice of a defect in the chain of title, this would not have served to invalidate the City of Alma's conveyance of its undivided one-half interest in the property since this statute applies only to disposal of property owned by a county.

treatment facilities, and improvement of the airport. Regardless of what condemnation law the proceedings were predicated upon, no one disputes that the 1973 condemnation was for a proper public purpose. Nevertheless, the trial court found that the 2003 transfer of title to Southeastern Maintenance, a private developer, thirty years after the initial condemnation, was invalid because neither Bacon County nor the City of Alma ever formulated a new economic development plan that encompassed an alternative use of the condemned property. We find no authority for the proposition that, at the time of the conveyance involved in this case, a governing authority was required to reformulate a new development plan for an alternative public use of condemned property once its original use was abandoned.

Pursuant to OCGA § 36-61-9 (c), with respect to property that a municipality or county seeks to acquire in accordance with the Urban Redevelopment Law, "[u]nless the property is to be acquired for the purpose of devoting it to a public use," it may be acquired through the exercise of the power of eminent domain only after the condemning entity has adopted an urban redevelopment plan authorizing the exercise of eminent domain by the agency to acquire the property, the owner of the real property to be acquired has been

14

notified of the planned rehabilitation of the property as set forth in the plan, and the owner has been offered the opportunity to develop the property in accordance with the plan. In this case, the property was not expressly acquired pursuant to the Urban Redevelopment Law, OCGA § 36-61-1 et seq., but in any event the parties do not dispute it was properly acquired through eminent domain proceedings and that the Lake Alma project was part of a development plan.

Even assuming the original condemnation proceeding was conducted pursuant to the Urban Redevelopment Law and that OCGA § 36-61-9 was applicable to it, the 2003 conveyance was not a re-taking by a municipality or county, and thus the transaction was not governed by the requirements of OCGA § 36-61-9. By its terms, the statute applies to the original taking of property by eminent domain. The 2003 conveyance was, instead, a re-purposing of the property from that involved in the original taking. "[W]here property is not ultimately used for the purpose for which it was originally condemned, it may be devoted to another proper public use." *Galloway,* supra, 246 Ga. at 473. The deed to Southeastern Maintenance incorporates an agreement whereby it agreed to construct improvements on the property that were deemed to be in the public

15

interest and "to foster and develop new industry and employment opportunities for the citizens of Alma and Bacon County." At the time of the conveyance to Southeastern Maintenance, such a conveyance was constitutionally permissible. See *Talley v. Housing Auth. of Columbus*, 279 Ga. App. 94 (2) (630 SE2d 550) (2006) (affirming summary judgment to a housing authority sued by the original owner of property that had been acquired by condemnation but later sold to a private citizen without any requirement for public use after the original public purpose for the condemnation was abandoned). In 2003 the Georgia Constitution had not yet been amended, in response to public concern over the holding of the United States Supreme Court in *Kelo v. City of New London*, 545 U. S. 469 (125 SCt 2655, 162 LE2d 439) (2005),[5] to withdraw the previous constitutionally granted authority for the sale or disposition of property, acquired by a governmental entity by eminent domain, to private entities for private use.[6] The amendment to OCGA § 36-61-9 (c) in 1971 (Ga. L. 1971, p.

---

[5] In *Kelo*, the Supreme Court held that a governmental entity's disposition of property acquired by eminent domain to another private entity did not violate the Fifth Amendment prohibition against taking private property for public use without just compensation when the disposition was made in furtherance of an economic development plan that serves a public purpose.

[6] At the time of the conveyance to Southeastern Maintenance, Art. IX, Sec. II, Par. VII of the Georgia Constitution of 1983 read, in pertinent part: "The General Assembly may authorize any

16

445, §§ 1, 2), requiring the condemning governmental entity to offer the owner of the property to be acquired the opportunity to develop the property in accordance with an adopted urban redevelopment plan, was enacted as a remedy to the previous "evil" of the absolute power granted to counties and municipalities to take private property for any public or even non-public purpose so long as the taking was to effectuate an adopted urban redevelopment plan. See *McCord v. Housing Auth. of City of Atlanta*, 246 Ga. 547, 550 (I) (272 SE2d 247) (1980). But by its terms, this requirement applies to the initial acquisition. Likewise, at the time of the conveyance to Southeastern Maintenance, the General Assembly had not yet enacted certain amendments to OCGA § 22-1-1, known as the Landowner's Bill of Rights and Private Property Protection Act, which exempted, from the definition of "public use," the public benefit of economic development with respect to authority for exercising the power of eminent domain. See OCGA § 22-1-1 (9) (B), effective April 4, 2006 (Ga. L. 2006, p. 39, § 3/HB 1313).

county, municipality, or housing authority to undertake and carry out community redevelopment, which may include the sale or other disposition of property acquired by eminent domain to private enterprise for private uses." The amendment which eliminated this provision and substituted the requirement that "eminent domain shall not be used for redevelopment purposes by any entity, except for public use, as defined by general law" (see Ga. L. 2006, p. 1111, § 1), was approved by the voters at the general election held on November 7, 2006.

17

The 2003 disposition of the property in dispute in this case is not governed by these 2006 changes to the law governing eminent domain. We conclude that at the time of the 2003 conveyance to Southeastern Maintenance, the City of Alma and Bacon County were not required to formulate an economic development plan for an alternative use of the property originally acquired by condemnation thirty years earlier. See *Talley*, supra. Further, the conveyance in this case was made for what appears to have been a proper public purpose at that time. We reject the Carter heirs' assertion that it was a one-to-one transfer of property interests for a private and not a public purpose which violates the Fifth Amendment.[7] Consequently, we reverse the trial court's holding that the 2003 conveyance to Southeastern Maintenance was invalid.

For these reasons, the trial court's order granting summary judgment to the Carter heirs is reversed, and the decree establishing title is vacated.

Judgment reversed in part and vacated in part. All the Justices concur, except Hunstein and Nahmias, JJ., who concur in judgment only as to Division

---

[7] Because the original condemnation was for a proper public purpose, this case is not analogous to those cases involving exercise of eminent domain for the purpose of one-to-one transfers of private property which the Supreme Court in *Kelo* stated are properly viewed "with a skeptical eye." See *Kelo*, supra, 545 U. S. at 487, n17.

2.

Decided January 27, 2014.

Title to land. Bacon Superior Court. Before Judge DeVane.

Hunter, Maclean, Exley & Dunn, Robert B. Lovett, Heather N. Hammonds, for appellant.

Smith, Ramay & Bennett, Ken W. Smith, for appellees.